GABRIEL, PURA, ÚRSULA, JOSÉ LUIS y FEDERICO HERNÁNDEZ MORALES, demandantes y apelantes, *v.* WENCESLAO CARABALLO, demandado y apelado.

Núm. 10420.—*Sometido:* Junio 1, 1951. *Resuelto:* Junio 18, 1951.

*Francisco González, Jr.,* abogado de los apelantes; *R. R. Rivera Correa,* abogado del apelado.

EL JUEZ PRESIDENTE INTERINO SEÑOR TODD, JR., emitió la opinión del tribunal.

El Tribunal de Distrito de Puerto Rico, Sección de Humacao, declaró con lugar la moción del demandado en este caso solicitando sentencia sumaria de acuerdo con la Regla 56 (*b*) (*c*) de las de Enjuiciamiento Civil.(1) Los demandantes solicitaron la reconsideración y acompañaron dos affdavits a su moción. El demandado no presentó prueba adicional alguna. La corte oyó a las partes y declaró sin

---

(1) Dicha moción se basó en una declaración jurada del abogado del demandado y en una certificación del Registrador de la Propiedad de Caguas. Aun cuando los demandantes no radicaron moción oponiéndose ni *affidavits,* sí presentaron copia certificada de una escritura pública. Más adelante nos referiremos a estos documentos.

lugar la reconsideración. Los demandantes apelaron y sostienen que el tribunal erró al desestimar la demanda.

Se trata de una acción sobre reivindicación y daños y perjuicios, alegándose en la demanda, en síntesis, que Santiago Morales y Úrsula Hernández Rivera siendo casados adquirieron, a título de edificación y en solar del Municipio de Gurabo, la casa que se describe; que Úrsula Hernández Rivera falleció ab intestato el 21 de diciembre de 1918 dejando, entre otros bienes, la mitad indivisa que por gananciales le pertenecía en dicha finca y por sus únicos y universales herederos a sus hermanos Gabriel e Isidoro Hernández Rivera y al cónyuge superviviente en la cuota usufructuaria; que Gabriel ni los herederos de éste nunca partieron ni liquidaron la herencia de su causante con el cónyuge viudo Santiago Morales, en vida de éste ni después de su muerte con sus herederos; que en enero de 1923 falleció Gabriel Hernández Rivera sin otorgar testamento, siendo sus herederos los aquí demandantes; que desde el mes de junio de 1937 el demandado Wenceslao Caraballo, sin título ni derecho alguno para ello y sin el consentimiento de los demandantes, viene poseyendo la totalidad de la finca antes descrita incluyendo el condominio de los demandantes y a pesar de haber sido requerido por éstos para su entrega material se ha negado a ello y continúa poseyendo dicho condominio a sabiendas de que es de la propiedad de los demandantes. En su segunda causa de acción se reclaman los frutos civiles que ha producido o debido producir el condominio de los demandantes desde 1937 ascendentes a $1,368. Esta demanda fué radicada en septiembre 25, 1946.

El 17 de junio de 1950 el demandado, con permiso de la corte, radicó una contestación enmendada negando los hechos esenciales de la demanda y alegando en contrario que la casa objeto del litigio fué edificada por Isabel Matilde Lloréns, segunda esposa de Santiago Morales, no habiendo tenido Úrsula Hernández Rivera participación alguna en dicha finca pues ésta fué un bien ganancial de Santiago Morales e Isabel

Matilde Lloréns. Como defensas especiales alegó que la demanda no aduce hechos constitutivos de causa de acción; que la acción de los demandantes, de tener alguna, está prescrita de acuerdo con el artículo 1857 del Código Civil; que el demandado es tercero hipotecario por haber adquirido su título de persona que aparecía con el suyo inscrito en el Registro, sin que de éste o por el personal conocimiento del demandado le constase que los demandantes tuvieran derecho alguno respecto al inmueble; que de acuerdo con las inscripciones del Registro de la Propiedad de Humacao la casa fué edificada por Isabel Lloréns mientras estaba casada con Santiago Morales; que Isabel Lloréns adquirió luego la mitad de la casa correspondiente a su esposo por herencia al fallecer éste, bajo testamento otorgado en septiembre 5, 1935, instituyéndola a ella por única heredera; que más tarde Isabel Lloréns fué demandada en cobro de dinero por Juan Jiménez García y fallado en su contra el caso, para la ejecución de la sentencia se vendió en pública subasta el inmueble de este caso habiéndolo adquirido Juan Jiménez García; que el 8 de junio de 1936 éste vendió la casa al demandado por escritura pública la cual fué inscrita el mismo día.

Basado en estas mismas defensas el demandado radicó su moción sobre sentencia sumaria, a la cual acompañó una declaración jurada de su abogado R. R. Rivera Correa y una certificación del Registro de la Propiedad de Caguas.

En la declaración jurada del abogado éste se limita a decir que ha hecho un estudio detenido de la documentación que le ha sometido el demandado, luego hace una síntesis de lo que aparece de la certificación expedida por el Registrador de la Propiedad de Caguas y termina diciendo:

"7. *Que según las manifestaciones del demandado,* desde el día 8 de junio de 1937 ha venido poseyendo dicha casa con justo título, en concepto de dueño, pública, pacífica e ininterrumpidamente hasta el día de hoy, o sea hace 13 años 22 días, y entre él y sus anteriores dueños en título la han poseído en igual concepto y condición por más de 10 años figurando la casa ins-

crita en el Registro a base de edificación, desde el dos de junio de 1936 a la una de la tarde." (Bastardillas nuestras.)

La certificación del Registro acredita lo expuesto en las defensas contenidas en la contestación.

Los demandantes, aun cuando no presentaron affidavits en oposición a la moción sobre sentencia sumaria, sí ofrecieron y fué admitida el día de la vista, copia certificada de la escritura núm. 118, otorgada el 25 de septiembre de 1926 ante el notario Miguel Rodríguez Alberty, sobre cesión de derechos y acciones, por Isidoro Hernández Rivera de una parte y Santiago Morales y su esposa Isabel Matilde Lloréns de la otra. En dicha escritura Isidoro Hernández Rivera compareció en su carácter de heredero ab intestato de su hermana Úrsula Hernández Rivera, esposa que fué en primeras nupcias del otro compareciente Santiago Morales, y en ella se hizo constar que entre los bienes dejados por Úrsula Hernández Rivera y pertenecientes a la sociedad de gananciales que tenía con Santiago Morales estaba la casa objeto de este litigio y la cual se describe haciéndose constar además que la misma fué construída, en solar del Municipio, mientras estuvo casado Santiago Morales con Úrsula Hernández Rivera, no habiéndose inscrito en el Registro. En dicha escritura Isidoro Hernández Rivera, en su carácter de heredero de su heremana Úrsula Hernández Rivera, cedió y traspasó a favor de Santiago Morales todos los derechos y acciones que le correspondían sobre dicha casa (y otra más) por la suma de $400, o sean $200 por cada una, y en la cláusula tercera se hizo constar lo siguiente:

"TERCERA: La compareciente señora Lloréns Quintero, esposa en segundas nupcias de don Santiago Morales Dávila, manifiesta por vía de aclaración y en honor a la verdad que su comparecencia en este acto no tiene otro propósito que el de facilitar el negocio o contrato que verifica su marido don Santiago Morales Dávila con el otro compareciente don Isidoro Hernández Rivera, *interesando a la vez aclarar* específicamente digo *especialmente que los bienes objeto de este contrato nunca han*

*pertenecido a la sociedad de gananciales que actualmente tiene
constituída con su mencionado esposo don Santiago Morales
Dávila, porque efectivamente fueron habidos por él y su pri-
mera esposa doña Úrsula Hernández Rivera durante el matri-
monio contraído por el señor Morales Dávila en primeras nup-
cias, como antes se ha dicho."* (Bastardillas nuestras.)

Fué a base de estas alegaciones y documentos que el tri-
bunal inferior dictó la sentencia sumaria desestimando la
demanda por haber llegado a la conclusión de que no existe
una genuina controversia en cuanto a los hechos, ya que, no
constando del Registro ninguna causa de nulidad del título
del demandado, éste era un tercero de acuerdo con el ar-
tículo 34 de la Ley Hipotecaria. Resolvió además que "No
existe tampoco alegación alguna en la demanda al efecto de
que el demandado, antes de adquirir la finca, tuviera conoci-
miento de que una parte de la misma le pertenecía a los de-
mandantes o de que el demandado tuviera conocimiento de
la nulidad de la inscripción que aparece en el Registro."

Los demandantes, repetimos, solicitaron la reconsideración
de la sentencia y acompañaron a su moción dos declaraciones
juradas prestadas por José C. Rivera y Francisco Jiménez
González. El demandado no radicó oposición a dicha mo-
ción y tampoco declaración jurada alguna para impugnar el
contenido de las radicadas por los demandantes. Sometida
la moción por memorándum de las partes, la corte declaró sin
lugar la reconsideración solicitada.

La declaración jurada de José C. Rivera, en síntesis, es
al efecto de que es natural de Gurabo y casado con Pura
Hernández Morales, hija legítima de Gabriel Hernández y
sobrina carnal de Úrsula Hernández, la primera esposa de
Santiago Morales, quien también era tío suyo; que el solar
donde radica la casa en cuestión fué cedido en usufructo
por el Municipio de Gurabo a Santiago Morales mientras
éste estuvo casado con Úrsula Hernández antes del año 1909
y posteriormente éste fabricó la casa con dinero de la so-
ciedad de gananciales que tenía con su primera esposa Úr-

sula Hernández, y pagó las contribuciones sobre la misma hasta el fallecimiento de Úrsula Hernández en 21 de diciembre de 1918; que es falso que Isabel Lloréns edificara dicha casa estando casada con Santiago Morales pues este matrimonio se celebró después de 1918; que ni los herederos de Úrsula Hernández ni los de Gabriel Hernández fueron hechos partes demandadas en el caso seguido por Juan Jiménez García contra Isabel Lloréns en el cual se embargaron los bienes objeto de este pleito; que cuando se hizo dicho embargo en el Registro, Santiago Morales no había inscrito la casa por haber fallecido por lo que el embargo se anotó con el defecto de no figurar dicha casa inscrita ni a su nombre ni a nombre de Isabel Lloréns; que antes de anotarse dicho embargo Santiago Morales y su segunda esposa Isabel Lloréns compraron a Isidoro Hernández, hermano y heredero de Úrsula Hernández el otro condominio que pertenecía a Isidoro Hernández desde la muerte de Úrsula Hernández, según aparece de la escritura núm. 118, supra, y en la cual Isabel Lloréns reconoció que la casa había sido adquirida por Santiago Morales y su primera esposa Úrsula Hernández; que el demandado Wenceslao Caraballo tenía conocimiento personal del origen de dicha casa y por lo tanto, que los demandantes eran dueños del condominio objeto de este pleito por haber nacido y vivido siempre en Gurabo y por haber tenido conocimiento personal del contenido de la escritura núm. 118, supra, y del defecto del supuesto título que inscribiera en el Registro fraudulentamente Juan Jiménez García y el propio demandado, por informes dádosle por distintas personas al demandado, entre ellas el declarante, quien en ocasión posterior mostró al demandado en persona dicha escritura.

Francisco Jiménez González juró que es natural de Gurabo donde ha vivido siempre; que conoce al demandado Wenceslao Caraballo desde que tiene uso de razón; que conoció a Santiago Morales y a su primera esposa Úrsula Hernández hasta que ambos murieron; que Santiago Morales se dedicó siempre al comercio teniendo su establecimiento en

la casa objeto de este pleito, habiendo sido el declarante dependiente de Morales por muchos años y en donde conoció al demandado desde que eran jóvenes y antes de morir Úrsula Hernández; que dicha casa fué adquirida por Santiago Morales estando casado con Úrsula Hernández; que cuando dicha casa fué embargada por Juan Jiménez García en un pleito contra Isabel Lloréns, él era quien tenía la tienda bajo su control; que posteriormente le visitó el demandado Wenceslao Caraballo y le pidió permiso para ver la casa por dentro porque Jiménez García la estaba ofreciendo en venta y se la había ofrecido a Caraballo y a él; que le enseñó la casa, menos el patio, al demandado y le recordó que en dicha casa tenían derecho los demandantes, o sean los hijos de Gabriel Hernández porque ya Isidoro Hernández la había vendido a Santiago Morales y su segunda esposa Isabel Lloréns; que esto ocurrió antes de comprarle Wenceslao Caraballo a Jiménez García; que Wenceslao Caraballo, antes de comprar, volvió otra vez a pedirle permiso para ver el patio, a lo cual accedió y le dijo que la casa no tenía servicio sanitario porque utilizaban el de la casa contigua, en la cual residió Santiago Morales con Úrsula Hernández y luego con su segunda esposa Isabel Lloréns.

Tomando en consideración las alegaciones de la demanda y las declaraciones juradas y la copia certificada de la escritura núm. 118, supra, presentadas por los demandantes y las alegaciones de la contestación y la declaración jurada del abogado del demandado y la certificación del Registro de la Propiedad, presentadas por el demandado, ¿puede sostenerse que no existe en este caso una genuina controversia en cuanto a los hechos, según resolvió el tribunal a quo? Creemos que existe y que el error señalado fué cometido.

En primer término diremos que la declaración jurada del abogado del demandado, Lic. R. R. Rivera Correa, no cumple con los requisitos exigidos por la Regla 56 (e) de las de Enjuiciamiento Civil, cuando dispone que "Los affidavits en

apoyo y en oposición de tal moción, se harán basados *en co-nocimiento personal*, contendrán aquellos hechos que serían admisibles en evidencia, y *mostrarán afirmativamente que el declarante es competente para testificar en cuanto a las cuestiones declaradas en los mismos . . .*" (Bastardillas nuestras.) Dicho letrado se limita a hacer referencia a lo que contiene el certificado del Registro de la Propiedad y a decir lo que le ha manifestado el demandado en cuanto al tiempo en que ha venido poseyendo la casa. Indudablemente el declarante no es competente para testificar sobre las cuestiones declaradas en su affidavit. *Hettinger & Co.* v. *Tribunal de Distrito*, 69 D.P.R. 137 y casos y autoridades citados en las págs. 143–44. Independientemente del affidavit del abogado, sin embargo, la corte pudo dictar la sentencia sumaria a base de la certificación del Registro, si ésta era suficiente, ya que la Regla 56 autoriza a las cortes de distrito a dictar una sentencia sumaria aun cuando la moción no esté basada en affidavits.

■■ Aceptando, sin resolverlo, que procediera la sentencia sumaria a base de la certificación del Registro radicada por el demandado, no obstante haber presentado los demandantes la copia certificada de la escritura núm. 118, supra, la situación varió al radicarse la moción de reconsideración acompañada a las declaraciones juradas de Rivera y Jiménez, las cuales no fueron impugnadas en forma alguna por el demandado. Aun cuando en la demanda original no se alegaran los hechos expuestos en la escritura núm. 118 y en las declaraciones juradas de Jiménez y Rivera, ya hemos resuelto que, bajo estas circunstancias, la demanda puede considerarse como si realmente hubiera sido enmendada para ajustarla a lo expuesto en los affidavits. *Hettinger & Co.* v. *Tribunal de Distrito*, supra, pág. 143. El hecho de que los affidavits se radicaran con la moción de reconsideración, no varía la situación. En *Ramos* v. *Pueblo*, 67 D.P.R. 640, 647, dijimos que si bien no erró la corte al desestimar la demanda al no ser controvertidos unos affidavits radicados por

el demandado, resolvimos que sí erró al no reconsiderar su sentencia cuando el demandante radicó con su moción de reconsideración, affidavits que no sólo tendían a sostener las alegaciones de la demanda sino que controvertían los radicados por el demandado en cuanto al hecho material de la prescripción de la acción, ya que "Ese hecho material que surge no obstante los affidavits, no podía ser resuelto por la corte sumariamente sino que debe ser dilucidado y resuelto por la prueba que se presente en el juicio correspondiente . . ."

En igual forma creemos que las cuestiones de hecho que surgen de las alegaciones, documentos y affidavits en el presente caso en cuanto a si el demandado tenía o no conocimiento, antes de adquirirla, de que la casa pertenecía, no a Isabel Lloréns sino a los herederos de Úrsula Hernández, no obstante la inscripción en el Registro en contrario, impedían que se dictara la sentencia sumaria. Dependiendo la defensa de prescripción ordinaria de diez años alegada por el demandado de que su posesión fuera de buena fe y con justo título—artículo 1857 del Código Civil—tampoco procedía la sentencia sumaria basada en tal defensa ya que su determinación dependía de los hechos puestos en controversia por los demandantes a través de las declaraciones juradas de Rivera y Jiménez, la escritura núm. 118 y las alegaciones de la demanda en contraposición a la certificación del Registro y las alegaciones de la contestación del demandado. Aparentemente la corte inferior, al resolver el caso en la forma en que lo hizo, no tomó en consideración las cuestiones de hecho contenidas en las mencionadas declaraciones juradas, las cuales tienden a demostrar que el demandado tenía conocimiento personal, antes de adquirir la casa, y por ende que no era tercero, de que ésta siempre perteneció a Santiago Morales y a su primera esposa Úrsula Hernández y también, por la escritura núm. 118, supra, del reconocimiento que al mismo efecto había hecho Isabel Lloréns, segunda esposa de Santiago Morales. Si estos hechos, que tienden a impugnar la buena fe y el justo título del demandado, son ciertos o

no, sólo podía determinarse en el juicio correspondiente ya que el demandado no los negó en forma alguna.

 Como se dijo en *Walling* v. *Fairmont Creamery Co.*, 139 F.2d 318, 322: "En apelación de una orden concediendo la moción del demandado sobre sentencia sumaria la corte de apelación debe dar al demandante el beneficio de toda duda. (Citas.)", ya que según se había dicho antes, ". . . el peso para establecer que no existe ninguna controversia genuina de hecho recae sobre el promovente, todas las dudas se resuelven en su contra . . . El objeto de la moción es separar lo formal de las cuestiones sustanciales levantadas por las alegaciones, y la corte examina la evidencia sobre la moción, no para decidir cualquier controversia de hecho que pueda presentarse, sino para descubrir si cualquier controversia efectiva existe . . ."

*Debe revocarse la sentencia y devolverse el caso para ulteriores procedimientos.*