# 96 DTA 69

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE BAYAMÓN**

RECEIVED OCT 29 1996 SERIALS DEPARTMENT HARVARD LAW SCHOOL LIBRARY

WILLIAM SOTO CRUZ Y OTROS
Demandantes-Apelantes

v.

UNION INDEPENDIENTE DE EMPLEADOS TELEFONICOS DE P.R.
Demandados-Apelados

Núm. KLAN-95-00904

San Juan, Puerto Rico, a 20 de abril de 1996

Panel integrado por su presidenta, Juez Fiol Matta,
la Juez Rodríguez de Oronoz y el Juez Gierbolini

Fiol Matta, Juez Ponente

Se trata de una acción instada por un unionado contra la Unión Independiente de Empleados Telefónicos de Puerto Rico *("la U.I.E.T."* o *"la Unión")* en la cual se alega violación de la constitución de la Unión, incumplimiento de contrato y daños. El tribunal de instancia desestimó en forma sumaria la demanda, luego de concluir que la Unión no incurrió en la práctica ilícita alegada ni violó su propia constitución ni el debido proceso de ley del demandante. La parte demandante apeló de dicho dictamen y la parte apelada presentó su alegato. Según explicamos a continuación, resolvemos que no erró el tribunal de instancia al desestimar la demanda por lo que procede confirmar la sentencia apelada.

Los hechos que dieron lugar a la destitución del apelante de su puesto como tesorero de la U.I.E.T. surgen de los autos. El demandante William Soto Cruz es empleado de la Puerto Rico Telephone Company y para los meses de septiembre a diciembre de 1992 era también el tesorero de la Unión, posición que ocupaba desde hacía muchos años. El 24 de septiembre de 1992 fue denunciado por alegadamente haberse apropiado de una cartera perteneciente a una huésped en el Casino del Hotel Condado Plaza.

El sábado 14 de noviembre de 1992, casi dos meses después, el periódico El Vocero publicó y destacó en primera plana este hecho. Ese mismo día, la Junta de Directores de la U. I.E.T. *("la Junta de Directores"* o *"la Junta")* celebró una reunión de emergencia a la que citó al señor Soto Cruz. Este asistió y alegó ser inocente del cargo imputado. Argumentó, además, que se trataba de un asunto privado y que no tenía que informar a la Junta sobre lo ocurrido, ya que le asistía el derecho a no autoincriminarse. La Junta de Directores resolvió pedirle la renuncia pero el señor Soto Cruz se negó aduciendo que su renuncia se interpretaría como que era cierto el acto criminal que se le imputaba. De acuerdo a ello, en reunión extraordinaria celebrada el día siguiente, la Junta decidió separarlo provisionalmente de su cargo como tesorero, por razón de las funciones de dicho cargo y la naturaleza del delito imputado y lo devolvió a su taller de trabajo en la Puerto Rico Telephone Company, hasta tanto se realizara una investigación de los hechos para luego tomar una decisión final. La Junta determinó que por constituir el cargo de tesorero una posición sensitiva, el señor Soto Cruz estaba obligado a informarle de la denuncia en su contra para que la Junta pudiera tomar las provisiones necesarias. El día siguiente, lunes 16 de noviembre, la Unión circuló un boletín especial firmado por su presidente, Sr. Félix Negrón, en donde éste explicó lo sucedido a la matrícula de la U.I.E.T.

Así las cosas, un mes después, el 14 de diciembre de 1992, otra afiliada de la U.I.E.T., Sra. Clara Canales, radicó contra el apelante una querella ante el Comité de Disciplina. Utilizó para ello el procedimiento disciplinario interno de la U.I.E.T., según establecido en su Reglamento de Disciplina. La querellante alegó que el señor Soto Cruz había violado varias disposiciones del Reglamento de Disciplina y de la constitución de dicha organización obrera, así como del Reglamento para el Orden Interno de la Junta de Directores (el Reglamento para el Orden Interno), al no informar de su denuncia a la Unión, a la matrícula, a la Junta de Directores, al Cuerpo de Delegados y al Comité de Fiscales. La querella fue notificada y se citó al apelante para una vista en su fondo conforme al procedimiento establecido.

La vista se celebró el 25 de marzo de 1993. A ésta comparecieron la querellante y el querellado, quien estuvo acompañado de un abogado. El 4 de mayo de 1993, el oficial examinador que presidió la vista determinó que el querellado ocultó a la matrícula de la Unión y en particular a la Junta de Directores de la cual era miembro, todo lo relacionado con su acusación criminal por el delito de apropiación ilegal agravada. ■ Encontró asimismo que este proceder violaba las normas contenidas en los incisos e y q de la sección 1 del artículo II del Reglamento de Disciplina y en los artículos VI, sección 4 y VII, sección 2, incisos y de la Constitución de la U.I.E.T. Por ello, recomendó que se separara indefinidamente al señor Soto Cruz de su cargo como tesorero de la Junta de Directores.

El Cómite de Disciplina aceptó e hizo suyas las conclusiones de hechos y de derecho del oficial examinador, así como su recomendación disciplinaria, en una resolución que emitió el 5 de mayo de 1993. Inconforme, el señor Soto Cruz apeló el 18 del mismo mes ante la Junta Directiva de la Unión, alegando que las decisiones del oficial examinador y del Comité de Disciplina *"modifican el*

*Reglamento y constitución de la Unión y no guardan relación con la querella presentada por la Sra. Clara L. Canales"*. ■ El 8 de septiembre de 1993, la Junta de Directores confirmó la decisión del Comité de Disciplina, luego de celebrar una vista en la que el querellado tuvo la oportunidad de argumentar oralmente su apelación por medio de su abogado.

Antes de eso, el 28 de mayo de 1993, el Tribunal de Distrito, Sala de San Juan, había absuelto al señor Soto Cruz del delito imputado.

Dos meses después de la decisión de la Junta, el 12 de noviembre de 1993 el señor Soto Cruz presentó en el Tribunal Superior, Sala de Bayamón, la demanda contra la U.I.E.T. que fue objeto de la sentencia sumaria aquí apelada. En su demanda alegó que la Junta de Directores de la U.I.E.T. violó su constitución y reglamento al separarle provisionalmente de su cargo de tesorero, sin vista previa y sin notificarle los cargos y luego al destituirlo permanentemente, como sanción disciplinaria. A esos efectos, alegó que no había en los estatutos o reglamentos de la U.I.E.T. disposición alguna que le impusiera la obligación de informar a dicha organización obrera la presentación de la denuncia en su contra. Alegó además que la acción de los demandados violó su contrato de trabajo y su derecho propietario sobre el cargo de tesorero de la Junta, así como su derecho a un debido proceso de ley y a la igual protección de las leyes. Reclamó la cantidad de un millón de dólares por concepto de daños emocionales y angustias mentales, la restitución a su puesto como tesorero de la Unión, el pago de todo lo que dejó de percibir a causa de su destitución y las costas y honorarios de abogado.

La parte demandada negó que la destitución fuese ilegal y levantó varias defensas afirmativas. Alegando falta de jurisdicción sobre la materia, solicitó que se dictara sentencia en forma sumaria. En su moción sostuvo que como lo imputado, de ser cierto, constituye una práctica ilícita de trabajo de acuerdo a la Ley de Relaciones de Trabajo de Puerto Rico, Ley 130 de 8 de marzo de 1945, L.P.R.A. sec. 61 *et seq.*, le correspondía su adjudicación a la Junta de Relaciones del Trabajo y no al tribunal.

El 10 de noviembre de 1994 se celebró una vista en la que se discutió la moción de sentencia sumaria presentada por la parte demandada. La minuta preparada por el tribunal ese día demuestra que las partes acordaron que no había controversia de hechos a dirimir en un juicio plenario y que lo único que restaba era aplicar el derecho, por lo que se podía disponer del caso sumariamente. De acuerdo a dicha minuta, el tribunal de instancia concedió un término para que la Unión demandada replicara al escrito que el demandante Soto Cruz había presentado, ese mismo día, en oposición a la solicitud de sentencia sumaria. También concedió término al demandante para contestar el escrito que habría de presentar la parte demandada y finalmente dispuso que con la presentación de estos escritos quedaría sometido el caso.

El 29 de junio de 1995, el tribunal de instancia emitió la sentencia sumaria objeto de esta apelación. La jueza de instancia concluyó que la alegada actuación ilegal de la Unión no constituyó una *"práctica ilícita o desleal en el empleo"*, sobre la cual la Junta de Relaciones del Trabajo tendría jurisdicción exclusiva, según se define este término en el artículo 8 (2) (b) de la citada Ley 130, 29 L.P.R.A. sec. 69 (2) (b). Según explicó el tribunal, el señor Soto Cruz no fue excluido o suspendido injustificadamente de *"la matrícula"* de la organización obrera, lo cual constituiría una práctica ilícita en el trabajo tipificada por el citado artículo, sino de su puesto como tesorero de la Junta de Directores de la U.I.E.T. De acuerdo a ello, concedió la solicitud de sentencia sumaria y desestimó la demanda por falta de causa de acción, al determinar que los hechos estipulados por las partes no demostraban que la U.I.E.T. había privado al demandante de su propiedad sin el debido proceso de ley, ni violado la constitución y reglamentos de la Unión al destituirlo del puesto de tesorero de la Junta Directiva. También resolvió que al no informar a la Unión sobre las imputaciones en su contra, el señor Soto Cruz violó varias normas y cánones constitucionales y reglamentarios de la Unión. Específicamente, encontró violación al artículo VI, inciso 4 de la Constitución de la U.I.E.T., que le requiere a los unionados *"[d]efender en forma leal y sincera los intereses, nombre y prestigio de la Unión, de sus oficiales y asociados en dondequiera que fueren atacados"* y al artículo VII, sección 2 de la constitución, que incluye entre las obligaciones de los unionados la obligación de *"procurar y cooperar en el engrandecimiento y progreso de la Unión, en la consecución de sus fines, principios y objetivos; mantener y defender la dignidad de ésta, sus organismos internos y su matrícula"* así como *"sostener y defender"* a la Unión y observar *"una conducta intachable en el cumplimiento de sus deberes como Unionado"*. Véase Constitución y Reglamento de Disciplina, apéndice a la apelación,

páginas 32-62.

Asimismo, se refirió el tribunal a la sección 1-e del Artículo II del Reglamento de Disciplina, que define como falta grave el que un unionado lleve a cabo *"[a]ctividades dirigidas a llevar a la Unión al desprestigio y al desprecio público"* y la sección 1-q, que establece que la Junta en su totalidad o parte de ella puede ser destituida si se comprueba que no es leal a la organización o que ha violado el juramento prestado al tomar posesión de su cargo el cual incluye defender, acatar y obedecer la constitución y reglamento de la Unión así como el Reglamento para el Orden Interno de la Junta de Directores.

Del Reglamento para el Orden Interno citó el artículo 8, que enumera las ofensas o conductas prohibidas a los oficiales de la Junta que podrían conllevar la sanción de la separación o destitución de su puesto y que en su inciso 3 le confiere a la Junta amplia discreción para categorizar como ofensa sancionable, de acuerdo a su gravedad, *"cualesquiera [sic] otra ofensa o conducta no contemplada en la sección 2"*. Sobre la alegación de violación al debido proceso de ley, el foro apelado explicó que:

*"Al señor Soto no se le violó el debido procedimiento de ley. Al enterarse de la noticia, el Presidente de la Unión lo citó a una reunión de emergencia para que explicara a la Junta sobre el suceso. Posteriormente, se le mantuvo informado de las decisiones de la Junta. Se le notificó y se le celebró una vista para que compareciera. Luego de la decisión se le orientó del derecho que tenía en ley de apelar la decisión. Todo esto cumple con los requisitos de: 1) notificación previa, 2) oportunidad para prepararse, ser oído y contrainterrogar, 3) celebración de una vista imparcial, 4) remoción del puesto mediante voto secreto de los miembros del Comité de Disciplina, disposición final que incluyó el derecho a apelar los procedimientos."* Sentencia de 29 de junio de 1995, página 11.

**II**

El apelante alegó en su demanda que la querella que dio base al proceso disciplinario en su contra se radicó en el Comité de Disciplina después de transcurrido el término de treinta días que para ello establece la sección 4 del artículo VI del Reglamento de Disciplina. **[3]** Alegó que por ello, el Comité de Disciplina no adquirió jurisdicción. En su primer señalamiento de error argumenta que el tribunal de instancia erró porque no resolvió nada en torno a esta alegación de falta de jurisdicción. Ciertamente, el tribunal de instancia nada dispuso en forma específica sobre la falta de jurisdicción del Comité de Disciplina para actuar en torno a la querella presentada en contra del apelante. No obstante, se sobreentiende que no consideró válida dicha alegación al determinar que la U.I.E.T. no violó el derecho del señor Soto Cruz al debido procedimiento de ley. De todas formas, su planteamiento es inmeritorio y no tiene apoyo en la prueba.

Uno de los hechos estipulados por las partes fue que la querellante Clara Canales no advino en conocimiento de la acusación criminal que pesaba contra el señor Soto Cruz hasta el lunes 16 de noviembre de 1992, cuando una compañera de trabajo le mostró la edición del periódico El Vocero del sábado anterior, 14 de noviembre de 1992. La querella se sometió al Comité de Disciplina el 14 de diciembre de 1992, y exactamente treinta días después de la publicación de la noticia y veintiocho días después de que la querellante se enteró de la misma. En ambos casos, la presentación de la querella se hizo dentro del término de treinta días dispuesto por el artículo VI, sección 4 del Reglamento de Disciplina de la U.I.E.T. y el Comité de Disciplina actuó con jurisdicción. El apelante intenta demostrar que la querella se presentó a los 31 días de haberse publicado la noticia, alegando que en el cómputo de los treinta días se cuenta el primer día en que se tuvo conocimiento de los hechos. No es correcta su apreciación de cómo se contabiliza dicho término, puesto que es harto conocido que no se incluye el día a partir del cual comienza un término, sino que el cómputo comienza al día siguiente, según dispone la Regla 68.1 de Procedimiento Civil, 32 L.P.R.A. Ap.III, R. 68.1.

La señora Canales presentó la querella en la *"Sec. Gen. U.I.E.T."* el 14 de diciembre de 1992 y según el sello impreso en la misma, fue recibida por el Comité de Disciplina de la Unión el 19 de diciembre de 1992. Contrario al argumento del apelante, el reglamento no requiere que el Comité de Disciplina reciba la querella dentro del término de treinta días. El artículo VI del Reglamento de Disciplina sólo requiere que ésta se presente *"radique"* dentro de dicho término. Contando la U.I.E.T. con una Secretaría General, la presentación a tiempo en esta dependencia tuvo el efecto de interrumpir

el término. En efecto, del expediente surge que al apelar de la decisión del Comité de Disciplina ante la Junta de Directores de la Unión, el propio apelante presentó su escrito en la Secretaría General de la U.I.E.T. Véase Exhibit 13 del apéndice al alegato de la parte apelada.

## III

El apelante impugna, además, la interpretación que da el tribunal de instancia al artículo 8, sección 3, del Reglamento para el Orden Interno de la Junta, que lo lleva a concluir que ésta tiene facultad para destituir al apelante por no informarle a la Junta sobre la acusación criminal presentada en su contra. A esos efectos, indica que las conductas que según la sección 2 del artículo 8 pueden conllevar la destitución de un oficial de la Junta de Directores están todas relacionadas con el desempeño de las funciones inherentes a su cargo. Por eso, argumenta que la disposición residual de la sección 3 está también limitada a conductas relacionadas con el ejercicio de los deberes de un cargo. Reclama que la omisión de informar a la Unión sobre los cargos que se le imputaron no es una conducta que pueda calificarse como ilegal ya que *"los hechos que dan base a [la imputación de conducta ilegal] surgen de un acontecimiento ajeno al ejercicio de las funciones de su cargo como Tesorero."* ■

No nos convence su planteamiento. Las ofensas o conductas especificadas en la sección 2 del artículo 8 del Reglamento para el Orden Interno de la Junta de Directores son realmente de dos tipos. Hay entre ellas conductas que empañan el carácter moral del oficial y hay otras que constituyen incumplimientos de sus deberes fiduciarios. ■ A pesar de que la conducta por la cual se destituyó al apelante de su puesto como tesorero de la Junta de Directores de la U.I.E.T. no aparece expresamente tipificada como falta sancionable en el citado artículo 8 del Reglamento para el Orden Interno de la Junta de Directores, la misma constituyó una falta grave a su deber fiduciario como oficial directivo de dicha organización encargado de velar por sus fondos y haberes. Dicho deber fiduciario emana de las normas constitucionales y reglamentarias previamente citadas, en las que apoyó su recomendación el Oficial Examinador que presidió la vista administrativa y la jueza de instancia en la sentencia apelada. Surge claramente de estas normas que además de los deberes y obligaciones específicos inherentes al cargo de cualquier oficial de la Junta de Directores de la U.I.E.T., está el deber fiduciario de velar por el prestigio y los intereses de la Unión. Cuando, como ocurrió en el caso de autos, a uno de los miembros de su Junta de Directores se le imputan cargos de apropiación ilegal agravada, dicho deber fiduciario lo obliga a informar de ello tanto a la matrícula como a los demás oficiales. El deber es aún mayor cuando se trata del tesorero de la Unión, que es la persona encargada de velar y administrar sus fondos. Según explica el Oficial Examinador en su informe, el prestigio y los intereses de la Unión Independiente de Empleados Telefónicos exigían que su tesorero le diera la oportunidad a la Junta de Directores y a su matrícula para diseñar, definir y determinar en conjunto la estrategia a seguir para enfrentar los serios efectos de desconfianza y desprestigio que dicha situación podía provocar contra la Unión.

La Junta de Directores consideró la conducta imputada al señor Soto como una grave y lo destituyó de su cargo. Así se lo permitía la sección 3 del artículo 8 del Reglamento. Para el Orden Interno de la Junta de Directores de la U.I.E.T., que no limita la discreción de la Junta a ofensas o conductas exhibidas por sus oficiales en el desempeño de las funciones de su cargo, como propone el apelante.

## IV

El apelante imputó error al tribunal por tratar su demanda como si fuera una revisión administrativa en vez de una acción ordinaria en daños y perjuicios, adjudicando, a su entender, a base de la razonabilidad de la interpretación que dio el Oficial Examinador a los estatutos de la Unión. Habiendo decidido que, como cuestión de derecho, la actuación de la Unión no fue ilegal no es necesario entrar en la visión del tribunal de instancia de su función en este caso. Nuestra determinación anterior, por tanto, hace innecesario discutir este señalamiento de error. No obstante, debemos señalar la sabiduría de la determinación del Tribunal Supremo citada en la sentencia impugnada, a los efectos de que *"los asuntos internos de una Unión, de ordinario atañen exclusivamente a sus miembros". Luce & Co. v. Junta de Relaciones del Trabajo*, 71 D.P.R. 360, 376 (1950); *Rivera v. Junta del Trabajo*, 70 D.P.R. 342, 348, nota 4 (1949). Es por ello, tal y como expresa la jueza de instancia, *"que existe el Reglamento para el Orden Interno de la Junta de Directores"*. Sentencia, página 12.

# V

El apelante Soto Cruz señala, además, que el foro sentenciador no podía dictar sentencia sumaria a favor de la Unión demandada por una razón distinta a aquella en la que se fundamentó la moción presentada por la Unión. Reclama que el único fundamento de la Unión para solicitar sentencia sumaria fue la falta de jurisdicción del tribunal sobre la materia y que su réplica y la evidencia que sometió en ese momento estaba dirigida únicamente a sostener dicha jurisdicción. Explica que no se sometió el caso en su totalidad ya que había hechos en controversia que necesitaban dirimirse en un juicio plenario. Como único ejemplo de *"hechos en controversia"* alega que la Unión no cumplió su promesa de reinstalarlo en su puesto si salía absuelto de cargo criminal imputado, según ocurrió. Aduce que dicha alegación requería una vista formal y no era susceptible de ser adjudicada mediante sentencia sumaria. Evaluamos sus planteamientos en torno a este error conscientes de que cuando, como en este caso, se apela contra la orden concediendo una moción de sentencia sumaria, al apelante en el pleito debe dársele el beneficio de toda duda, puesto que corresponde al promovente establecer que no existe ninguna controversia genuina de hecho. *Hernández v. Caraballo*, 72 D.P.R. 673, 683 (1951). No obstante, los planteamientos del apelante Soto Cruz no encuentran apoyo en los autos. No surge de la demanda ni de los documentos en autos alegación alguna con respecto a la referida promesa incumplida por la Unión. Tampoco surge tal alegación de la Moción en Solicitud de Remedio de 5 de agosto de 1993, a la cual nos refiere el apelante para sustentar su planteamiento.

Lo que sí nos revelan los autos es que en la Conferencia con Antelación al Juicio que se celebró el 26 de septiembre de 1994 las partes *"[i]ndican que toda la prueba en el caso es estipulable"* y que *"[l]a parte demandada inform[ó] que radicó moción solicitando sentencia sumaria"*. La minuta de ese día expresa que el tribunal concedió 30 días a la parte demandante para contestar la sentencia sumaria y que señaló la misma para discusión el 10 de noviembre de 1994. Por su parte, la minuta de la vista del 10 de noviembre, en la que se discutió la moción de sentencia sumaria, indica que el demandante promovido, señor Soto Cruz, coincidió con la Unión en *"que los hechos en la demanda no están en controversia"*. Según la minuta, ambas partes estaban contestes en que *"no existen hechos a dirimir en un juicio; que [l]o único que resta es aplicar el derecho"* y que el caso quedaría sometido una vez recibiera el tribunal los escritos adicionales para los cuales concedió término durante la vista.

Habiéndose estipulado los hechos por las partes en dos ocasiones distintas, sólo restaba al tribunal aplicar el derecho para determinar la procedencia de la sentencia sumaria solicitada. Al así hacerlo, concluyó que la parte demandante no tenía causa de acción, puesto que la Junta de Directores de la Unión había actuado legalmente al destituirlo de su cargo como tesorero de la misma. Aunque se abstuvo de adjudicar formalmente la alegación de falta de jurisdicción sobre la materia, el tribunal aplicó la Ley 130 y concluyó que como el señor Soto Cruz no fue excluido de la matrícula de la Unión, la actuación de la Junta no constituyó una práctica ilegal en el empleo y por tanto, no era de la jurisdicción exclusiva de la Junta de Relaciones del Trabajo. Concurrimos con esta apreciación del foro apelado, así como con aquella de que la Junta *"cumplió con su deber y responsabilidad fiduciaria de salvaguardar los intereses, el nombre y prestigio de la Unión"* (Sentencia, página 11), según se lo requiere el artículo VI (4) de su constitución.

Por los fundamentos antes expuestos se confirma la sentencia apelada.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Sonia Pacheco Román
Secretaria General

## ESCOLIOS 96 DTA 69

1. *"El Sr. William Soto no ha explicado ni antes de la publicación de la noticia ni después [sic] a la publicación de la misma, a ningún organismo directivo de la Unión, excepto la explicación dada a la Junta de Directores el día 14 de noviembre de 1992, luego de publicada la noticia en El Vocero, los hechos ocurridos y la situación surgida y el porqué [sic] no se informó inmediatamente."* Determinación de hechos, número 15, *"Opinión y Orden"* del oficial examinador, página 28, apéndice al alegato de la parte apelada.

**2.** Carta de William Soto al Secretario General de la Unión, fechada 18 de mayo de 1993.

**3.** *"Sección 4 - Las querellas contra unionados deberán radicarse a más tardar, dentro de los próximos treinta (30) días calendarios a partir de la fecha en que tuvieron lugar los hechos o cuando el unionado y/u Oficial de la Unión que somete la querella tuvo conocimiento de ellos."* Reglamento de Disciplina, apéndice 5 del escrito de apelación.

**4.** Escrito de apelación, página 7.

**5.** Las conductas tipificadas son:

*"Hurtar propiedad de la Unión o de un compañero; dañar propiedad de la Unión o de un compañero; hacer uso de drogas narcóticos [sic] o estupefacientes; estar embriagado en la oficina durante horas laborables; tres días de ausencias sin notificación previa; peleas, agresiones, amenazas, conducta tumultuosa, provocaciones o conducta indecorosa; ser convicto de delitos que implique depravación moral; insubordinación negarse a cumplir una orden dada por persona, cuerpo u organismo con autoridad para ello; falsa representación, falsificación de documentos oficiales de la Unión, incluyendo los informes de trabajo, ofrecer información falsa a la Junta Directiva o a su Presidente; divulgar información o documentos confidenciales de la Unión sin la debida autorización; violentar o no cumplir o desobedecer los acuerdos de la Junta de Directores."* Véase Reglamento para el Orden Interno de la Junta de Directores, artículo 8, sección 2.