Gilberto Gierbolini, Juez Ponente
*810 TEXTO COMPLETO DE LA SENTENCIA
El demandante-apelante del caso de epígrafe acude a este Tribunal y nos solicita la revocación de la Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 10 de enero de 1996 y cuya copia de la notificación fue archivada en autos el 17 de enero de 1996. En dicha sentencia, el tribunal resolvió la demanda presentada por el demandante, Orlando Miranda Figueroa (Miranda), mediante sentencia sumaria a favor de la parte demandada, Méndez & Company, Inc. y otros (Mendez). Luego de examinar los hechos del caso, la posición de las partes contenida en sus respectivos escritos y anejos, así como el derecho aplicable, hemos determinado que procede CONFIRMAR.
I
Miranda comenzó a trabajar para Méndez el 25 de enero de 1993. Desde esa fecha hasta el 19 de abril de 1993, trabajó como ayudante de vendedor. Desde entonces, desempeñó su trabajo en la posición de vendedor, hasta la fecha de su renuncia, el 31 de diciembre de 1993. El 20 de julio de 1994, Miranda presentó demanda ante el Tribunal de Instancia, Sala Superior de Bayamón, solicitando el pago de $35,984.00 por concepto de horas extras trabajadas y no compensadas, por horas para tomar alimentos trabajadas y no compensadas, más una cantidad igual como penalidad, según dispuesto en 29 L.P.R.A. Sección 282. La reclamación ascendió a la cantidad de $71,968.00. Por su parte, Méndez presentó contestación a la querella en la que alegó que Miranda desempeñó el trabajo de un agente viajero y/o vendedor ambulante y/o chofer-vendedor (driver-salesman) y/o ayudante vendedor y que como tal no tenía derecho a los pagos reclamados. Posteriormente, el 19 de enero de 1995, Méndez presentó una moción solicitando sentencia sumaria. En la misma, argumentó que tanto el vendedor como el ayudante de vendedor son agentes viajeros bajo el Artículo 19 de la Ley 379 de 15 de mayo de 1948, 29 L.P.R.A. 288 y un "outside salesman" y/o chofer vendedor bajo el "Fair Labor Standards Act", 29 U.S.C.A. 201 y por tal razón ambos cargos están exentos del pago de horas extras. El 23 de febrero de 1995, Miranda presentó oposición a moción de sentencia sumaria y solicitud de sentencia sumaria parcial a los efectos de que el tribunal determinara que él no era agente viajero bajo la Ley 379, supra. En respuesta, Méndez presentó réplica a oposición a solicitud de sentencia sumaria y oposición a solicitud de sentencia sumaria *811 parcial, en la que solicitó al tribunal que declarara no ha lugar a la solicitud de sentencia sumaria parcial de Miranda y desestimara la demanda de Miranda en su totalidad mediante sentencia sumaria. Luego, Miranda presentó, el 24 de marzo de 1995, moción solicitando sentencia sumaria parcial bajo el "Fair Labor Standards Act" a favor del querellante, en la que solicitó una determinación de que no era un "outside salesman". Más tarde, el 3 de abril de 1995, Méndez presentó réplica a moción solicitando sentencia sumaria parcial a favor del querellante bajo el "Fair Labor Standards Act". Luego de varias comparecencias de ambas partes, el 10 de enero de 1996 el tribunal de instancia resolvió el caso mediante sentencia sumaria a favor de Méndez. Esta sentencia fue notificada el 17 de enero de 1996.
La parte apelante, Miranda, señala como único error:

"Cometió craso error de derecho el honorable Tribunal de Instancia al dictar sentencia sumaria a favor de la apelada y al no determinar sumariamente que el apelante no era un agente viajero y un outside salesman."

Al examinar el expediente ante nos, advertimos que la controversia del presente caso consiste en (1) determinar si procede la utilización del mecanismo de sentencia sumaria; (2)determinar si, como cuestión de derecho, las funciones que desempeñaba Miranda en Méndez eran o no las de un agente viajero o las de un "outside salesman".
n
-A-
La moción de sentencia sumaria está regulada por la Regla 36 de las de Procedimiento Civil, 32 L.P.R.A. Regla 36, Ap. III. (1983). Mediante ésta, un tribunal puede disponer de un caso sin celebrar vista en su fondo en aquellas situaciones en que la parte que la solicita demuestra que no existe controversia en cuanto a los hechos esenciales alegados en la demanda y que tan sólo resta disponer de las controversias de derecho existentes, PFZ Properties, Inc. v. General Accident Insurance Company, 94 J.T.S. 116; Medina Morales v. Merck Sharp & Dhome, 94 J.T.S. 52; Caquías Mendoza v. Asoc. Residentes Mansiones de Río Piedras, 93 J.T.S. 127; Cuadrado Lugo v. Santiago Rodríguez, 90 J.T.S. 59; Tello Rivera v. Eastern Airlines, 119 D.P.R. 83 (1987). A pesar de que este mecanismo procesal promueve la adjudicación rápida de los casos, así como la economía procesal, su objetivo básico es obtener una solución justa, Cuadrado Lugo v. Santiago, supra. En este contexto, dos son las determinaciones que debe hacer un tribunal para que pueda disponer del caso sumariamente. En primer lugar, debe determinar que no existen controversias en cuanto a los hechos. En segundo lugar, debe determinar que en derecho procede emitir sentencia a favor de la parte que la solicita.
Sin embargo, como dicha determinación requiere la adjudicación de un litigio sin que las partes tengan la oportunidad de presentar su caso en corte, la sentencia sumaria es un "remedio extraordinario que sólo debe concederse cuando el promovente ha establecido su derecho con claridad y ha demostrado que la otra parte no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de las alegaciones que no hayan sido refutadas por la evidencia presentada con la moción", Corp. of. Presiding Bishop v. Purcell, 117 D.P.R. 714 (1987).
La parte que solicita la sentencia sumaria es quien tiene el peso de establecer la inexistencia de una controversia real sobre todo hecho material y pertinente que, a la luz del derecho sustantivo aplicable, procedería una sentencia a su favor como cuestión de derecho, Roth v. Lugo, 87 D.P.R. 386 (1963). De otro lado, corresponde a la parte promovida rebatir dicha posición por vía de declaraciones juradas u otra documentación que apoye su posición pues, si bien el no hacerlo no necesariamente significa la emisión de un dictamen sumario automáticamente en su contra, tal omisión lo pone en riesgo de que ello ocurra, Corp. of Presiding Bishop v. Purcell, supra; Flores v. Municipio de Caguas, 114 D.P.R. 521 (1983). La Regia 36.3, supra, impone al juez que considera una solicitud de sentencia sumaria la obligación de considerar, no sólo las declaraciones juradas sometidas para sustentarlas o las contradeclaraciones juradas de la parte contraria, sino las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, así como "todos los documentos obrantes en los autos", Flores v. Municipio de Caguas, supra; Padín v. Rossy, 100 D.P.R. 259 (1971). A tenor con esta obligación, el juzgador deberá analizar concienzudamente la moción de sentencia sumaria y su oposición, sus anejos y el expediente en su totalidad, con el propósito de determinar si queda algún hecho material en *812 controversia o si existen alegaciones afirmativas en la demanda presentada que no han sido refutadas; en cualquiera de dichos casos, de ello ser así, el tribunal deberá denegar la solicitud de sentencia sumaria, Cuadrado v. Santiago Rodríguez, 90 J.T.S. 59; Corp. of Presiding Bishop v. Purcell, supra.
La determinación de la existencia o no de controversia en cuanto a los hechos requiere que el tribunal estudie los documentos que son sometidos por las partes, tanto en apoyo, como en contra de la moción. En este proceso, la existencia de duda por parte del tribunal sobre la existencia o no de una controversia de hechos en el caso bajo su consideración, derrota la moción de sentencia sumaria, Corp. Presiding Bishop v. Purcell, supra. Sobre el promovente es que recae el peso para establecer que no existe ninguna controversia genuina de hecho y todas las dudas serán resueltas en su contra, Hernández v. Caraballo, 72 D.P.R. 673, 683 (1951).
En el presente caso, el tribunal de instancia actuó correctamente al determinar que no existía controversia en los hechos esenciales del caso, de modo que procedía resolver la controversia de derecho.
-B-
La determinación de si Miranda era o no un agente viajero o "outside salesman" resulta fundamental puesto que de ello depende que le apliquen las disposiciones relativas al pago de horas extras que provee la Ley Número 379 de 15 de mayo del 1948, 29 L.P.R.A. 274 (Ley Número 379) y el "Fair Labor Standards Act", 29 U.S.C.A. 207. De acuerdo con el Artículo 5 de la Ley 379, supra,:
"Todo patrono que emplee o permita que trabaje un empleado durante horas extras vendrá obligado a pagarle por cada hora extra un tipo de salario igual al doble del tipo convenido para las horas regulares; Disponiéndose, sin embargo, que todo patrono de una industria en Puerto Rico cubierta por las disposiciones de la Ley de Normas Razonables de Trabajo (Fair Labor Standards Act)...sólo vendrá obligado a pagar por cada hora extra de trabajo en exceso de la jornada legal de ocho (8) horas un tipo de salario a razón de, por lo menos, tiempo y medio del tipo de salario convenido para las horas regulares..." Ley Número 379, Artículo 5, 29 L.P.R.A. 274.
Por su parte el Artículo 13 de la misma ley provee una acción legal a los empleados afectados por el incumplimiento patronal de las disposiciones relativas al pago de horas extras. En lo pertinente dispone:
"Todo empleado que reciba una compensación menor que la fijada en las sees. 271 a 288 de este título para horas regulares y horas extras de trabajo o para el período señalado para tomar los alimentos tendrá derecho a recobrar de su patrono mediante acción civil las cantidades no pagadas, más una suma igual por concepto de liquidación de daños y perjuicios, además de las costas, gastos y honorarios de abogados del procedimiento." Ley Núm. 379, Artículo 13, 29 L.P.R.A. 282.
El derecho a reclamar el pago de horas extras corresponde a lo que la ley denomina "empleados". La definición que para dicho término provee la ley es la siguiente:
"Empleado" incluye a todo empleado, obrero, jornalero, artesano, trabajador, oficinista, dependiente de comercio, y a toda persona empleada mediante salario, sueldo, jornal u otra forma de compensación en cualquier ocupación, establecimiento, negocio o industria, con excepción de agentes viajeros y vendedores ambulantes. La palabra "empleados" no incluirá ejecutivos, administradores ni profesionales, según estos términos sean definidos por la Junta de Salario Mínimo de Puerto Rico, así como a los oficiales u organizadores de uniones obreras cuando actúen como tales, Ley Número 379, Artículo 19, 29 L.P.R.A. 288.
En el presente caso, Miranda cuestiona que el tribunal de instancia haya determinado que él era un agente viajero, con el efecto de que quedaba excluido de las disposiciones relativas al pago de horas extras.
La Ley Número 379, supra define al agente viajero:
"Agentes viajeros" significa aquellos empleados que ejercen las funciones de viajeros vendedores y cuya labor consiste en llevar a cabo transacciones de ventas de productos, servicio o de cualesquiera otros bienes *813 tangibles o intangibles a nombre de un patrono, intervenga o no personalmente en la distribución o entrega del producto, servicio o bienes, incluyendo cualquier trabajo o servicio incidental o relacionado con la actividad principal de venta. Normalmente, estas personas prestan servicios fuera del establecimiento central; no retoman diariamente al mismo; nadie supervisa diariamente sus actividades una vez salen a vender; usan su discreción en cuanto al esfuerzo y tiempo a dedicar a su labor y la propia naturaleza de su trabajo impide determinar las horas real y efectivamente trabajadas cada día." Ley Número 379, Artículo 19, 29 L.P.R.A. 288.
En el ámbito federal, el "Fair Labor Standards Act", dispone para el pago de horas extras. En lo pertinente establece:
"(a) (1) Exceptas otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-halftimes the regular rate at which he is employed." 29 U.S.C.A. 207.
Además, señala ciertas exenciones a las disposiciones sobre horas extras:

"(a) The provisions of sections 206 and 207 of this title shall not apply with respect to:

(1) any employee employed in a bona fide administrative, or professional capacity, or in the capacity of outside salesman... 29 U.S.C.A. 213."
Miranda sostiene que, contrario a lo propuesto por Méndez y resuelto por el Tribunal de Primera Instancia, las funciones que desempeñó tampoco quedaban enmarcadas en la definición de "outside salesman". De acuerdo con el "Code of Federal Regulations" (C.F.R.) la definición de dicho término es la siguiente:

"Section 541.500 Definition of "outside salesman."

Section 541.5 defines the term "outside salesman" as follows: The term "employee employed.in the capacity of outside salesman" in section 13 (a) (1) of the Act shall mean any employee:

(a) Who is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business in:

(1) Making sales within the meaning of section 3 (k) of the Act; or

(2) Obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

(b) Whose hours of work of a nature other than that described in paragraph (a) (1) or (2) of this section do not exceed 20 percent of the hours worked in the workweek by nonexempted employees of the employer: Provided, that work performed incidental to and in conjuntion with the employee's own outside sales or solicitation, including incidental deliveries and collections, shall not be regarded as nonexempt work, 29 C.F.R. section 541.5."

Al interpretar la Ley Número 379, supra el Tribunal Supremo de Puerto Rico ha resuelto que la misma excluye a los agentes viajeros de su ámbito, A.D. Miranda, Inc. v. Falcón, 83 D.P.R. 735, 737 (1961). De modo que las disposiciones que amparan a los empleados en sus reclamos por pago de horas extras no les aplican. El trabajo que realizó Miranda en Méndez era el de un agente viajero o "outside salesman", por consiguiente, no queda cobijado por las disposiciones de la Ley Número 379, supra.
Miranda comenzaba su jornada de trabajo a las 5:45 de la mañana. A esa hora tenía que estar presente en Méndez y esperar por que el supervisor revisara su camión para estar fuera de la compañía no más tarde de las *814 seis de la mañana, Apéndice, página 92. Una vez llegaba a los negocios que formaban parte de su ruta procedía a entregar la mercancía ordenada, cobrar su costo y facturar la transacción. A ésto, precisamente, se refiere la Ley Número 379, supra cuando, al definir agente viajero, habla de "transacciones de ventas de productos... a nombre de un patrono".
Al llevar a cabo este tipo de transacción, Miranda cumplía, además, con el requisito de realizar ventas que, en el ámbito federal, es uno de los elementos definitorios del "outside salesman". En cuanto a dicho requisito, el "Code of Federal Regulations" (C.F.R.) dispone:

"Section 541.501 Making sales or obtaining orders.

(a) Section 541.5 requires that the employee be engaged in:

(1) Making sales within the meaning of section 3 (k) of the Act, or (2) obtaining orders or contracts for services or for the use of facilities.

(b) Generally speaking, the divisions have interpreted section 3 (k) of the Act to include the transfer of title to tanginble property, and in certain cases, of tangible and valuable evidences of intangible property. Thus sales of automobiles, coffee, shoes, cigars, stocks, bonds, and insurance are construed as sales within the meaning of section 3 (k). (Section 3 (k) of the Act states that "sale" or "sell" includes any sale, exchange, contract o sell, consignment for sale, shipment for sale, or other disposition,)" 29 C.F.R. 541.501."

En la deposición, Miranda relata como transacciones usuales de su trabajo las siguientes:

"Dependiendo la cantidad que él me hubiese comprado, pues entonces yo daba los viajes en el carrito. Entonces, pues iba a hacer... le daba rotación a la parte de atrás del almacén, ponía la que estaba anterior... la ponía encima de la que dejé en ese momento. Entonces procedía a donde el cliente a que me firmara la factura. El verificaba que fuera lo que le hubiese dejado. Me firmaba la factura.

...entonces pues y procedía afirmar la factura y meter la cantidad de dinero en la máquina, que ella me pedía que si era en cheque o en "cash", pues que se lo desglosara según lo que me habían dado. Entonces iba donde el cliente, le daba su recibo." Apéndice página 95.
La narración que hace Miranda de dicha transacción es típica de su desempeño con los demás clientes, consistente en tomar sus órdenes de compra para entregar el producto en un viaje posterior. La misma revela una compraventa en la que el cliente obtenía un producto a cambio del pago del precio correspondiente, luego de lo cual Miranda expedía el recibo de compra. Sin duda ésto constituía una transacción de venta del acuerdo al tipo que establece el estatuto. En tal sentido, señala el C.F.R.:
" ...there is little question that a routeman who provides the only sales contact between the employer and the customers, who calls on customers and takes orders for products which he delivers from stock in his vehicle or procures and delivers to the customer on a later trip, and who receives compensation commensurate with the volume of products sold, is employed for the purpose of making sales, 29 C.F.R. Section 541.505." 
De hecho, en la deposición a la que fue sometido, el propio Miranda aceptó la caracterización de su labor como transacciones de venta:

"P. Pero contésteme. Usted vende... Está bien, según lo que usted quiera vender y según lo que él necesite, ¿verdad que sí?

R. El cliente me pedía según lo que necesitaba.

*815
P. Okey. ¿ Usted llevaba a cabo transacciones de venta? ¿Sí o no?

R.Si."

Apéndice, página 132.
El hecho de que Miranda tuviera que ayudar a cargar el camión y luego entregar la mercancía, no lo convirtió en un empleado dentro del significado que provee la ley. Ya en la descripción de agente viajero que hace la Ley Número 379, supra advertimos que las transacciones de venta de las que trata dicho trabajo son llevadas a cabo "intervenga o no personalmente en la distribución o entrega del producto... incluyendo cualquier trabajo o• servicio incidental o relacionado con la actividad principal de venta. "■ Miranda no intervenía en la carga del camión de manera principal; sólo cuando hacía falta algún producto que el empleado asignado a cargar el camión no hubiere incluido, Apéndice, página 246’. De todos modos, este trabajo era incidental a su gestión de venta. Estaba intrínsecamente relacionado con las órdenes que Miranda preparaba, a raíz de lo que cada cliente pedía y según las cuales el camión era cargado, Apéndice, páginas 88-89. Al describir al "driver salesman" el C.F.R. dispone específicamente: "Incidental activities include loading the truck with the goods to be sold by the driver salesman, driving the truck, delivering the products sold; removing empty containers for return to the employer, and collecting payment for the goods delivered," 29 C.F.R. Section 541.505 (c). En cuanto al carácter incidental a las actividades de venta, el C.F.R. dispone además:
"Work performed 'incidental to and in conjunction with the employee's own outside sales or solicitation’ includes not only incidental deliveries and collections which are specifically mentioned in Section 541.5 (b), but also any other work performed by the employee in furthering his own sales efforts. Work performed incidental to and in conjunction with the employee's own outside sales- or solicitations would include, among; other things, the writing of his sales reports, the revision of his own catalog, the planning or his itinerary and attendance at sales-conferences." 29 C.F.R. Section 541.503.
En tal sentido, el trabajo de revisar y preparar la carga del camión, acomodar-la mercancía en los negocios visitados y asistir a seminarios de venta, entre otros, eran realizados en función de la labor principal de ventas.
Por otra parte, las funciones que realizaba Miranda están adecuadas a las características que la ley atribuye al agente viajero. Es decir que, normalmente, estas personas prestan servicios fuera del establecimiento central; no retornan diariamente al mismo; nadie supervisa diariamente sus actividades una vez salen a vender; usan su discreción en cuanto al esfuerzo y tiempo a dedicar a su labor y la propia naturaleza de su trabajo impide determinar las horas real y efectivamente trabajadas cada día.
De acuerdo con el C.F.R., "Characteristically the outside salesman is one who makes his sales at his \ customer's place of business," 29 C.F.R. Section 541.502 (b). Miranda desempeñaba su trabajo fuera del local de Méndez y realizaba su labor de venta en el camión provisto por la compañía. Con tal camión, Miranda visitaba , los distintos negocios que formaban su ruta para realizar sus ventas, Apéndice, páginas 91-104.
Generalmente, mientras visitaba a los distintos clientes, Miranda no era supervisado por ningún empleado de Méndez. En efecto, sólo estuvo sujeto a supervisión en muy pocas ocasiones, Apéndice, páginas 167 y 171. Por tanto, la naturaleza del trabajo realizado por Miranda hacía virtualmente imposible determinar las horas en que, efectivamente, estaba trabajando.
Asimismo, quedaba a cargo de Miranda el esfuerzo y tiempo utilizado con cada cliente para realizar las ventas, Apéndice, páginas 168-170. Es decir que, ante la ausencia de supervisión directa; Miranda tenía) ' discreción para permanecer en uno u otro negocio, según su juicio.
A pesar de que Miranda tenía que regresar a Méndez diariamente, este hecho por sí sólo no es determinante, no por ello incumplía con los requisitos que para un agente viajero exige la ley. Para tomar nuestra determinación, tenemos que analizar la totalidad de las circunstancias caso a caso.
Por otro lado, Miranda plantea que no debe caber duda en cuanto a que durante el tiempo en que trabajó *816 como ayudante de vendedor, su labor no estaba exenta. Ello es incorrecto. La sección 541.506 del Título 29 del C.F.R. expresa adecuadamente las circunstancias en que un ayudante de vendedor puede quedar exento de las disposiciones relativas a horas extras en la misma medida que el vendedor.

"In some concerns it is the custom for the salesman to be accompanied by the trainee while actually making sales. Under such circumstances it appears that normally the trainer-salesman and the trainee make the various sales jointly, and both normally receive a commission thereon. In such instances, since both are engaged in making sales, the work of both is considered exempt work."

En Méndez el trabajo del ayudante-vendedor era prácticamente el mismo que el del vendedor en términos de su intervención en las gestiones de venta. O sea, tomaba parte en las órdenes de venta, entrega de mercancía y cobro del pago, etc, Apéndice, páginas 144-145. Referente a la relación de trabajo entre un vendedor y su ayudante, Miranda señaló que "Era un trabajo de equipo", Apéndice, página 98. En efecto, en Méndez, el ayudante de vendedor tomaba parte activa en la labor de venta de modo que su trabajo era igualmente exento.
Por los fundamentos antes expuestos, CONFIRMAMOS la Sentencia recurrida.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIO 97 DTA 190
1. Esta sección trata sobre el "driver salesman". Sobre éste señala que, en los casos en que está empleado con el propósito de realizar ventas, lo está en la capacidad de un "outside salesman", de modo que su trabajo está exento.