ROSELIO ACEVEDO VERA Y OTROS
Demandantes-Apelantes

v.

GOBERNADOR DE PUERTO RICO Y OTROS
Demandados-Apelados

Núm. KLAN-95-00078

San Juan, Puerto Rico, a 15 de agosto de 1996

Panel integrado por su presidenta, la Juez Fiol Matta,
la  Juez Rodríguez de Oronoz y el Juez Gierbolini

Fiol Matta, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Se apela de la sentencia emitida el 15 de junio de 1994 que desestima sumariamente, por estar prescrita, la causa de acción de algunos co-demandantes en este pleito. Este fue incoado en el año 1982, al amparo de la Ley de Derechos Civiles de Puerto Rico, Ley Núm. 12 de 8 de agosto de 1974, ■ por empleados del entonces Departamento de Instrucción Pública, ahora de Educación (en adelante el Departamento), contra el Gobernador, la Secretaria y otros funcionarios del Departamento, en su capacidad oficial y personal. ■ La sentencia también desestimó, por falta de prueba, la acción de otro grupo de có-demandantes y denegó la reclamación de otros tres. Asimismo, impuso el pago de *"las costas y gastos a los demandantes y la suma de $2,500.00 de honorarios de abogado por su temeridad"*. El juez de instancia acogió la reconsideración oportunamente solicitada por la parte demandante y luego de ciertos incidentes procesales, el 26 de enero de 1995 denegó finalmente la reconsideración solicitada.

### I

Hace más de quince años se inició la acción que fue objeto de la sentencia que se apela. La demanda fue presentada el 30 de abril de 1982 por el señor Acevedo y otros 22 maestros (en adelante *"el grupo original"*) del Departamento. Otros trece maestros de dicha agencia (en adelante *"el grupo interventor"*) se unieron posteriormente como demandantes para los meses de agosto, octubre, noviembre y diciembre de 1982, julio de 1983 y septiembre de 1984, mediante solicitudes de intervención en las que alegaron tener cuestiones de hechos y de derecho similares a las alegadas en la demanda original. ■

Cada uno de los demandantes (36 en total) indicó en sus alegaciones particulares las veces que había comparecido a entrevistas como candidato o candidata para ascenso a diferentes posiciones para las cuales, según alegan, no fueron escogidos por pertenecer a un partido distinto al partido que administraba el gobierno en ese momento. En la demanda original, los demandantes alegaron que habían comparecido desde el 1977 hasta 1980 a múltiples entrevistas para ocupar diferentes puestos directivos en ascensos y que a pesar de estar debidamente cualificados, no fueron seleccionados por el único motivo de ser simpatizantes del Partido Popular Democrático. Por tal razón, alegaron que seviolaron sus derechos civiles y constitucionales a no ser discriminados por razón de sus creencias políticas. También cuestionaron la legalidad y constitucionalidad del procedimiento utilizado por el Departamento en la selección de candidatos para ocupar puestos directivos en ascenso, así como la legalidad del reglamento sobre selección y ascensos. ■

Los maestros alegaron en la demanda que luego de acudir a las entrevistas, no recibieron notificación del nombre, la dirección y las cualificaciones de la persona seleccionada y nombrada para ocupar la plaza ofrecida. Exponen que esto no les permitió conocer los hechos en los que podían basar la impugnación de dicha actuación administrativa, todo ello en menoscabo de sus derechos a un debido proceso de ley y a la igual protección de las leyes. En cuanto al reglamento alegaron, en forma general, lo siguiente:

*"El Reglamento que se utiliza en la selección de candidatos a puestos directivos es inconstitucional en su faz y en su aplicación al establecer criterios de valoración que dejan al arbitrio del Secretario y/o sus oficiales, la certificación, selección y nombramiento de personal, inválidamente y sin fundamentos científicos y cuando se permite al Secretario suspender la vigencia y aplicación del reglamento mediante veto. Tampoco se establece un método regularizado para revisar actuaciones arbitrarias, irrazonables y discriminatorias y/o al reservarle al Secretario la función de revisar las querellas surgidas bajo su dirección."* Demanda, alegación número 12, pág. 6.

Los maestros demandantes solicitaron al tribunal, de forma general, que emitiera a esos efectos sentencia declaratoria y un interdicto permanente y que ordenase a la parte demandada compensarlos por los daños y perjuicios que alegaban haber sufrido. También solicitaron que se les adjudicaran los puestos de los que fueron privados, así como todos los derechos, privilegios e inmunidades a los que tenían derecho *"a partir del momento en que debió adjudicarse a su favor la plaza ilegalmente negada"*. ■ En sus alegaciones particulares, cada uno de ellos solicitó, además, que se le instalara en la primera plaza que solicitó y se le concediera el sueldo y los beneficios marginales correspondientes a dicha plaza desde el momento en que debió ser nombrado. En su contestación, los demandados negaron algunas de las alegaciones, aceptaron otras y levantaron varias defensas afirmativas, incluyendo la prescripción de la acción. Luego de un período extenso de descubrimiento de prueba, que se prolongó hasta el 1986, el juez de instancia, a petición de los abogados de la parte demandante, ordenó al Departamento preparar un informe relacionando las diferentes entrevistas a las cuales asistieron los demandantes en el período cubierto por la demanda, del 1977 al 1980. El informe debía indicar las fechas en que los reclamantes habían comparecido a las entrevistas y los puestos directivos que solicitaban, así como los requisitos mínimos de dichos puestos, las personas que fueron seleccionadas para ocuparlos y el sueldo de la plaza. La agencia demandada preparó dicho informe y en agosto de 1991 lo notificó a las partes. ■

Apoyándose en este informe, el 6 de febrero de 1992 (10 años después de iniciado el pleito) la parte demandada presentó una Moción de Sentencia Sumaria y/o Desestimación por Prescripción. En ésta, explicó que al prepararse para la vista en su fondo, se percató de que *"la gran mayoría de las acciones de algunos de los demandantes"* estaban prescritas. Señalaron los demandados que habían levantado la defensa de prescripción en la contestación a la demanda y que, de acuerdo con la Regla 36.3 de Procedimiento Civil, su solicitud de desestimación por prescripción era oportuna, ya que se estaba presentando y notificándose el 6 de febrero, doce días antes del inicio de la vista en su fondo. La parte demandada alegó que el punto de partida para determinar la prescripción de la acción era la fecha de la entrevista para ascenso en cada caso, puesto que las supuestas violaciones a los derechos civiles de los demandantes surgieron al no seleccionárseles, por razones políticas, para los distintos puestos para los que compitieron. Argumentó que cada demandante advino en conocimiento del daño alegado en el momento de la entrevista y que si los demandantes asistieron a entrevistas para ascensos desde el año 1977 sin ser seleccionados, ya al momento de interponer la demanda (30 de abril de 1982) habían transcurrido 5 años desde que algunos de ellos tuvieron conocimiento del daño. Puesto que las acciones en daños y perjuicios por discrimen culposo son acciones bajo el artículo 1802 del Código Civil que prescriben al año, la parte demandada alegó que estaban prescritas todas las acciones de aquellos co-demandantes que no habían asistido a una entrevista desde el 30 de abril de 1981 al 30 de abril de 1982, es decir, en el año antes de la radicación de la demanda.

El 11 de febrero de 1992, la parte demandante presentó su oposición a la solicitud de sentencia sumaria de la demandada y el 18 de febrero, primer día de la vista en su fondo, se discutió la misma por orden del juez de instancia. Los demandantes argumentaron en dicha vista, al igual que lo hicieron en su moción en oposición a la solicitud de sentencia sumaria, que como las actuaciones discriminatorias que dieron lugar a la acción fueron continuas, la reclamación de los demandantes no estaba prescrita. El juez de instancia que presidió la vista no emitió en ese momento resolución en torno a la solicitud de sentencia sumaria. Sin embargo, limitó la presentación de prueba a la de aquellos demandantes cuyas causas de acción se basaban en hechos ocurridos dentro del año previo a la radicación de la demanda. Asimismo, ordenó a la parte demandada suplementar *"en forma más específica y detallada la moción [de sentencia sumaria] por prescripción con los informes que preparó el Departamento"*, luego de que concluyera la vista en su fondo. En ese nuevo informe debía relacionar y someter los exhibits correspondientes a la comparecencia de cada uno de los demandantes a las diferentes entrevistas celebradas durante el período de 1977 al 1982.

De este modo, el tribunal pospuso su determinación sobre la desestimación sumaria de las acciones de aquellos demandantes que, de acuerdo con el informe sometido por el Departamento, no habían comparecido a entrevista para ascensos durante el año inmediatamente anterior a la fecha en que se interpuso la demanda, en adelante el *"Grupo B"*. De acuerdo al informe preparado por la agencia apelada, este grupo incluía catorce de los co-demandantes del grupo original y 10 del grupo de interventores. ■ Al así disponer, el tribunal no tomó en consideración que aún cuando se tomara la fecha de entrevista como punto de partida, el término prescriptivo de la causa de acción de los

interventores no podía ser el mismo que el de los demandantes originales, pues las entrevistas de éstos fueron posteriores a la presentación de la demanda el 30 de abril de 1982. ■ No empece ello, el tribunal no hizo distinción alguna en su sentencia ni particularizó el término que cada uno de ellos tenía para iniciar su causa de acción. ■

De esta forma, quedó limitada la vista a la prueba documental y testifical de aquellos doce demandantes individuales que de acuerdo con el informe preparado por la agencia apelada habían asistido a entrevistas entre abril 30 de 1981 y abril 30 de 1982, en adelante el *"Grupo A"*. En este grupo estaban incluidos tres interventores. ■ Concluida la prueba de la parte demandante, la parte demandada solicitó la desestimación de la acción por falta de prueba.

Luego de analizar los argumentos de las partes, el juez de instancia concluyó que los testimonios de los demandantes fueron *"flacos y descarnados"*. El tribunal desestimó, por insuficiencia de prueba, la causa de acción de todos los demandantes del Grupo A, exceptuando tan sólo a tres: Alejandro Bocachica Colón, Herminia Rodríguez Carmona y Daisy López Nunci. ■

A tenor con esta determinación, el juez de instancia ordenó a la demandada desfilar su prueba únicamente en cuanto a las reclamaciones de estos tres demandantes. La parte demandada presentó como testigo a la señora Carmen Rodríguez de la Villa, Oficial de Personal del Departamento de Educación por más de 10 años. Esta declaró sobre los reglamentos de la agencia y sobre el procedimiento de ascensos para puestos directivos. También declaró el señor Camilo Domínguez. Luego de once días de vistas, concluyó el desfile de prueba y el 19 de agosto de 1992 quedó sometido el caso con relación a los doce co-demandantes que presentaron su prueba. Cabe mencionar que ya para esa fecha el tribunal había otorgado, mediante sentencia parcial emitida el 5 de febrero de 1992, el desistimiento con perjuicio solicitado por el co-demandante del grupo original Héctor Castro Marchand. Posteriormente, el 2 de octubre de 1984, el tribunal concedió el desistimiento con perjuicio solicitado por Roselio Acevedo Vera y finalmente, en la sentencia apelada ordenó el archivo con perjuicio solicitado por el co-demandante Gilberto Pagán Ortiz.

El 23 de febrero de 1993, un año después de habérselo ordenado el tribunal en la vista de 18 de febrero de 1992, la parte demandada presentó la información adicional con relación a la solicitud de sentencia sumaria por prescripción, en un escrito titulado *"Moción Supletoria a Moción de Sentencia Sumaria por Prescripción"* al cual anejó un Informe de Entrevistas. Ocho meses después, el 23 de octubre de 1993, la parte demandante presentó un escrito oponiéndose a dicha moción de la demandada, el cual denominó *"Moción en Relación a Moción Supletoria a Moción de Sentencia Sumaria por Prescripción y Sobre Otros Extremos"*. Esta moción no fue considerada por el juez de instancia al evaluar si procedía la sentencia sumaria solicitada, pues la calificó como no radicada, porque se presentó siete meses después de haberse presentado la *"Moción supletoria"* de los demandados. ■

En este escrito, la parte demandante argumentó que además del Informe de Entrevistas sometido por los demandados, hay que considerar las alegaciones de todos los demandantes respecto al patrón de discrimen en el procedimiento de ascensos y en la aplicación del reglamento.

Así, reclama que el tribunal debe considerar todos los documentos que obran en autos, incluyendo aquellos que se obtuvieron en el descubrimiento de prueba, tales como deposiciones e interrogatorios. Añade además la parte demandante que en su demanda no sólo alegó *"un patrón continuo e ininterrumpido de acciones y/u omisiones que violentó los derechos constitucionales de los demandantes por razón de sus preferencias políticas al no extenderle los nombramientos en los puestos directivos"*, sino que también alegó la inconstitucionalidad e ilegalidad del procedimiento para la selección de puestos directivos en ·el Departamento y del Reglamento que regía dichos procedimientos para las fechas de los hechos. Según explica la moción, éstas son *"alegaciones separadas de aquellas relacionadas a las entrevistas asistidas [sic] por los demandantes"* y no se discutieron en la solicitud de sentencia sumaria presentada por la demandada. ■ Así pues, reclamó que subsisten controversias de hechos en cuanto a dichas alegaciones. También argumentó que hay controversias de hechos en cuanto a la fecha en que cada demandante advino en conocimiento del daño que había sufrido, debido a que el Departamento no les notificaba el nombre de la persona recomendada y nombrada a los puestos a que ellos habían aspirado, impidiendo *"que estos tomaran*

*conocimiento de los actos 'culposos' en su contra hasta tiempo después de ocurrido el mismo [sic]".* ▄▄

El 23 de marzo de 1994, la parte demandante presentó otra moción supletoria a las mociones presentadas en oposición a la solicitud de sentencia sumaria. En ésta, además de esgrimir los mismos planteamientos que ya había señalado, alegó hechos y acompañó extensa prueba documental con relación a 21 de los 22 demandantes objeto de la moción de sentencia sumaria por prescripción (el Grupo B) para demostrar que sus acciones no estaban prescritas. El 1 de junio de 1994, el co-demandante José A. Lebrón Lugo, uno de los demandantes objeto de la moción de sentencia sumaria, presentó una moción suplementando esta última moción de la parte demandante y negando que su acción estuviera prescrita. El juez de instancia no tomó determinación alguna con relación a estas dos mociones posteriores.

Cuatro meses después, el 15 de junio de 1994, el tribunal emitió la sentencia apelada. En la parte demandante señala que el tribunal de instancia incurrió en error:

*"1. Al emitir la sentencia sin considerar las mociones radicadas por la parte apelante relacionadas con la moción de sentencia sumaria por prescripción presentada por la parte demandada aún cuando las mismas fueron presentadas con suficiente antelación a la emisión de la sentencia.*

*2. Al determinar que las causas de acciones de algunos de los demandantes [los del Grupo B] estaban prescritas.* ▄▄

*3. Al desestimar y/o declarar no ha lugar las causas de acciones de algunos co-demandantes [Grupo A] por alegada falta de prueba.*

*Al imponer a los demandantes el pago de honorarios por temeridad."*

Nos solicitan los apelantes que dejemos sin efecto la sentencia, permitamos la presentación de prueba de aquellos co-demandantes cuyos casos fueron desestimados por prescripción (Grupo B) y concedamos el remedio solicitado en la demanda a los tres co-demandantes que presentaron su prueba (Grupo A). Además, pide que dejemos sin efecto la determinación de temeridad y el pago de honorarios de abogados.

El 9 de agosto de 1995, a petición de la parte apelante, emitimos resolución ordenando la transcripción de la prueba oral vertida por algunos de los demandantes y testigos. El 19 de diciembre de 1995 finalmente se presentó la misma. Hemos analizado con mucho detenimiento los planteamientos de la parte apelante contenidos en su escrito de apelación y en su oposición al alegato de los demandados apelados, así como el alegato de estos últimos, la transcripción de la prueba oral y demás documentos en autos. Todo ello, a la luz del derecho aplicable nos convence que debemos modificar la sentencia apelada.

## II

Como primer error, la parte apelante señala que el juez de instancia dictó sentencia sin considerar tres mociones que había presentado en oposición a aquellas de la parte demandada solicitando la desestimación de la demanda. En particular, alega que el tribunal debió tomar en consideración la *"Moción Supletoria a Moción en Oposición a Moción de Desestimación y/o Sentencia Sumaria por Prescripción",* que fue presentada el 23 de marzo de 1994, cuatro meses antes de que se emitiera la sentencia el 15 de julio de 1994.

Según ya hemos señalado, el juez de instancia expresó en la sentencia apelada que tuvo por no radicada la moción de 23 de octubre de 1993 de los apelantes porque se presentó fuera de término. Aún cuando no se expresa ni tomó determinación alguna sobre las dos mociones que posteriormente presentó la parte demandante (23 de marzo de 1994 y 1 de junio de 1994) es razonable suponer que éstas tampoco fueron consideradas por la misma razón.

En su discusión en torno a este primer señalamiento de error, la parte apelante argumenta que

dichas mociones fueron radicadas con suficiente antelación al dictamen final del tribunal para ser consideradas por éste. También alega que la actuación del tribunal fue contraria a lo establecido por la Regla 36.3 de las de Procedimiento Civil y a la jurisprudencia que requiere a los jueces considerar todos los documentos de autos, sean o no parte de la solicitud de sentencia sumaria, antes de resolver dicha solicitud. Además, la parte apelante niega haberse cruzado de brazos frente a la moción de sentencia sumaria y argumenta que a través de sus mociones expresó su posición en torno a la misma.

La Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, impone al juez que considera una solicitud de sentencia sumaria la obligación de considerar no sólo las declaraciones juradas sometidas para sustentarlas o las contradeclaraciones juradas de la parte contraria, sino *"las alegaciones, disposiciones [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas"* amén de *"todo documento admisible en evidencia"* que obre en autos. *Flores v. Municipio de Caguas,* 114 D.P.R. 521 (1983); *Padín v. Rossy,* 100 D.P.R. 259 (1971). A tenor con esta obligación, el juzgador deberá analizar concienzudamente la moción de sentencia sumaria y su oposición, sus anejos y el expediente en su totalidad, con el propósito de determinar si queda algún hecho material en controversia o si existen alegaciones afirmativas en la demanda radicada que no han sido refutadas. En cualquiera de dichos casos, de ello ser así, el tribunal deberá denegar la solicitud de sentencia sumaria. *Cuadrado Lugo v. Santiago Rodríguez & Hato Rey Psychiatric Hospital, Inc.,* ___ D.P.R. ___ (1990), **90 J.T.S. 59**;*Corp. of Presiding Bishop v. Purcell,* 117 D.P.R. 714 (1987). En resumen, sólo procede que se dicte sentencia sumaria cuando el tribunal determina que no existe controversia real sobre hecho material alguno y que lo único que queda es aplicar el derecho a dichos hechos incontrovertidos. Corresponde al promovente el peso de establecer esto, a tal punto que nuestra jurisprudencia concede el beneficio de la duda al que se opone al dictamen sumario, a la vez que nos advierte que la sentencia sumaria es un *"remedio extraordinario que sólo debe concederse cuando el promovente ha establecido su derecho con claridad y ha demostrado que la otra parte no tiene derecho a recobrar bajo cualquier circunstancia discernible de las alegaciones que no se hayan refutado por la evidencia presentada".* Corp. of Presiding Bishop v. Purcell, supra, página 714. Véase *Jorge v. Universidad Interamericana,* 109 D.P.R. 505, 512 (1980); *Mercado Riera v. Mercado Riera,* 87 D.P.R. 566, 567 (1972); *Hernández v. Caraballo,* 72 D.P.R. 673, 683 (1951).

De acuerdo con lo anterior, concluimos que el juez de instancia debió considerar las mociones en oposición presentadas el 23 de marzo de 1994 y 15 de julio de 1994 por la parte promovida pues éstas constaban en autos desde mucho antes de emitirse la decisión. Asimismo, entendemos que abusó de su discreción al calificar como no presentada la moción del 23 de octubre de 1993. Los hechos procesales anteriormente expuestos demuestran que la parte promovente solicitó la sentencia sumaria por prescripción a los nueve años de haberse incoado la demanda y que se tardó más de un año en cumplir con la orden del tribunal de suplementar su moción de sentencia sumaria. De la misma forma en que permitió la presentación tardía de los documentos de los demandados, el juez de instancia debió haber acogido también la moción de 23 de octubre de 1993 presentada por los demandantes y considerarla para determinar si había una controversia de hechos que impidiera conceder la sentencia sumaria solicitada. Además, aún sin considerar las tres mociones de los demandantes, no procedía dictar sentencia por prescripción de la acción en forma sumaria porque de las alegaciones de los demandantes originales y de los interventores, así como de los demás documentos y mociones en autos, surgía una clara controversia de hechos sobre el momento en que se conoció el daño. Según discutiremos más adelante, esta es una determinación fáctica crucial al momento de resolver sobre la prescripción.

Los apelantes también reclaman que incidió el tribunal al desestimar de forma sumaria por prescripción las causas de acción de aquellos co-demandantes que de acuerdo con el informe sometido por el Departamento no habían asistido a entrevistas durante el año inmediatamente anterior al día en que se radicó la demanda. Reclaman que en las tres mociones que no fueron consideradas por el juez de instancia se expusieron razones válidas para concluir que la gran mayoría de los co-demandantes comparecieron a por lo menos una entrevista durante el año inmediatamente anterior a la radicación de la demanda y que fundamentaron su posición con documentos. Aducen que de los referidos escritos también surge que otros co-demandantes se unieron al pleito en fechas posteriores, por lo que la fecha de la presentación de la demanda original no servía como punto de referencia para la prescripción de sus acciones, máxime cuando *"[l]a Moción de Intervención de algunos co-demandantes y sus alegaciones específicas constituyen de por sí su demanda. Regla 21, de*

*Procedimiento Civil. Rocca vs. Thompson, 223 US 317".* ▪

También alegan los apelantes que sus acciones no estaban prescritas porque los daños sufridos por los co-demandantes eran continuos e ininterrumpidos, por *"ser continuamente discriminados en la selección y nombramiento de puestos directivos por razón de su afiliación política"* y porque *"también continuaron sufriendo las pérdidas de salario...".* Estos daños, según reclaman *"no cesan y/o finalizan hasta tanto y en cuanto no se extienda[n] los nombramientos reclamados".* ▪ Este planteamiento fue presentado en una de las mociones que el juez se negó a considerar. No obstante, si al desestimar las acciones de aquellos demandantes que de acuerdo con el informe del Departamento no habían asistido a entrevista durante el año inmediatamente anterior a la demanda, el juez de instancia señaló que los daños reclamados por los co-demandantes eran daños únicos y ciertos cuyo término prescriptivo era el de un año a contarse desde que cada agraviado tuvo conocimiento del mismo; que en este caso tanto el daño como el conocimiento del mismo ocurrieron al mismo tiempo y que no hubo actos interruptores del término prescriptivo.

### III
No hay duda de que los artículos 1802 y 1868 del Código Civil proveen el marco normativo de acuerdo al cual debemos evaluar los planteamientos de las partes. Las acciones instadas por empleados públicos contra el Estado por daños derivados de discrimen político son acciones gobernadas por el artículo 1802 del Código Civil. ▪ Como la Ley de Derechos Civiles no dispone un término prescriptivo, ▪ estas acciones están sujetas al término de prescripción extintiva de un año que establece el artículo 1868 del Código Civil. ▪ *Cintrón v. Estado Libre Asociado,* ___ D.P.R. ___ (1990), **90 J.T.S. 128**, página 8232. Este término se computa no desde que se produce el daño, sino desde el momento en que el agraviado conoce de su existencia y puede interrumpirse de tres formas distintas: (1) por su ejercicio ante los tribunales, (2) por reclamación extrajudicial (3) por cualquier acto de reconocimiento de deuda por el deudor. Artículos 1868, *supra* y 1873 del Código Civil, 31 L.P.R.A. sec. 5302; *Galib Frangie v. El Vocero,* ___ D.P.R. ___ (1995), **95 J.T.S. 71**; *Delgado Rodríguez v. Nazario de Ferrer,* 121 D.P.R. 347 1988).

De acuerdo con lo anterior, en el caso que nos ocupa no se podía determinar si había transcurrido el año de prescripción sin antes precisar el momento en el cual los demandantes tuvieron conocimiento del daño sufrido por ellos. Al alegar en su moción de sentencia sumaria que está prescrita la acción de cada maestro que no hubiese ido a entrevista para promoción o ascenso durante el año inmediatamente anterior a la demanda, la parte promovente asume que cada maestro demandante advino en conocimiento del discrimen y por ende del daño, el mismo día de su entrevista.

No obstante, surge de la demanda original y de las propias alegaciones individuales de los co-demandantes originales y de los que entraron al pleito posteriormente, así como de otros documentos en autos, que los candidatos que competían para puestos no se enteraban de quiénes eran los escogidos y por tanto, de que en dicha selección se había discriminado en su contra por sus ideas políticas, hasta después de la entrevista. No se recibió prueba alguna sobre cuándo sucedió ese momento con respecto a cada demandante. Por ello, no procedía dictar la sentencia sumaria, pues había controversia de hechos con relación al momento cognoscitivo del daño. Véase *Rivera Encarnación v. E.L.A.,* 113 D.P.R. 383 (1982) en el que el Tribunal resolvió que no procede dictar sentencia sumaria cuando la parte demandante alega que no advino en conocimiento del daño y del acto culposo o negligente hasta determinado tiempo después de ocurrido éste. Existe en esa situación una controversia de hechos en torno a la modalidad del *"daño reconocido".* Véase también Fernando Reglero Campos, *Comentarios al Código Civil y Compilaciones Forales,* Tomo XXV, Vol. 2, Editorial de Derecho Privado, páginas 118-119 (Albaladejo y Díaz Alabart, eds.). Sin embargo, tampoco tienen razón los apelantes al alegar que a la fecha de sus reclamaciones no había comenzado la transcurrir término prescriptivo alguno. Sostienen su argumento en la naturaleza alegadamente continua tanto del discrimen del que se quejan, como del daño resultante de éste. Argumentan que contra ellos se desarrolló un patrón continuo de discrimen, puesto que reiteradamente se les denegaban las plazas en ascenso para las cuales competían, por la única razón de ser miembros del Partido Popular Democrático y entienden que los daños que reclaman también son continuos, mientras no se les extiendan los nombramientos reclamados.

Según ha reconocido nuestro Tribunal Supremo y señala la doctrina civilista, *"la fecha del*

*conocimiento del daño constituye con frecuencia un delicado problema de prueba e interpretación. La dificultad reside en la variedad de circunstancias en que se da el problema del conocimiento del daño. Hechos distintos requieren soluciones diversas". Galib Frangie v. El Vocero, supra,* a la página 925. Este problema se manifiesta particularmente en el caso de los daños continuados. Sobre éstos, explica el Tribunal Supremo en *Galib Frangie v. El Vocero, supra,* a la página citada:

*"Daños continuados son "aquellos producidos por uno o más actos culposos o negligentes imputables al actor, coetáneos o no, que resultan en consecuencias lesivas ininterrumpidas, sostenidas, duraderas sin interrupción, unidas entre sí, las cuales al ser conocidas hacen que también se conozca --por ser previsible-- el carácter continuado e ininterrumpido de sus efectos,* **convirtiéndose en ese momento en un daño cierto** *compuesto por elementos de daño actual (aquel (sic) que ya ha acaecido) y de daño futuro previsible y por tanto cierto."* [Cita de Herminio Brau del Toro, *supra,* página 648.] Énfasis suplido.

Quiere ello decir que aún ante el supuesto de daños continuados, una vez se conocen el acto culposo y su consecuencia lesiva, se convierte el daño en uno cierto y comienza a transcurrir el término prescriptivo. Acaecido dicho conocimiento, la acción prescribirá, al igual que en toda acción de daños, al transcurrir el año desde que el perjudicado los conoce y puede ejercitar la acción. Es sólo cuando no se pueden fraccionar los daños, es decir, cuando hay una *"progresiva generación de daños",* la cual precisamente por su carácter progresivo o acumulativo resulte en *"un resultado lesivo de nocividad más acusada que la simple suma de los repetidos agravios",* que el comienzo del período prescriptivo se pospone hasta que cesa la actividad continua. *Reglero Campos,* páginas 458 y 459, n. 144. Así pues, aún cuando los daños sean continuos, no serán indemnizables los daños que se produzcan antes del año de reclamación, si éstos son individualizables. *Id.,* páginas 455-57. Lo importante, según señala la doctrina, es determinar cuándo los daños tienen *"la sustantividad necesaria para iniciar el cómputo". Id.,* página 459, n. 144.

Acorde a lo anterior, concluimos, primeramente, que no estamos ante un supuesto de daño continuado. De ser ciertas las alegaciones de los demandantes, la agencia apelada y sus funcionarios incurrieron, con respecto a cada uno de los maestros, en una serie de actos culposos distinguibles uno de los otros, a saber, no promoverlos de puesto por razones políticas, cuya consecuencia lesiva fue conocida por los perjudicados en un momento dado. Por tanto, en cada una de las alegadas actuaciones ilegales estuvieron presentes las tres etapas comprendidas en el proceso de producción de un daño, esto es, un acto culposo, una consecuencia lesiva y el conocimiento de ésta por parte del perjudicado. Cada uno de dichos actos culposos produjo un daño cierto único que originó una causa de acción para el perjudicado y el término para ejercitarla comenzó a discurrir desde el momento en que éste tuvo conocimiento del daño. Así pues, lo determinante con respecto al inicio del término de prescripción de las acciones en este caso es el momento en el cual comienza la producción de los daños y el momento en que el perjudicado estuvo en condiciones de ejercitar su causa de acción. Véase Herminio Brau del Toro, *Los Daños y Perjuicios Extracontractuales, en Puerto Rico,* **Publicaciones J.T.S.,** 1986, página 649.

Por otra parte y contrario a lo que alegan los apelantes, aunque estuviéramos ante un supuesto daño continuado, no se trata de la progresiva generación de daños que justificaría posponer el inicio del término prescriptivo hasta el cese de la actividad dañosa: *"...en caso de actividad dañosa continuada no son indemnizables los daños producidos con anterioridad al plazo de prescripción de la acción, cuando tales daños son perfectamente individualizables...". Reglero Campos, supra,* página 458.

Por otro lado, la parte apelante plantea que erró el foro *a quo* al desestimar las causas de acción de aquellos demandantes que presentaron su prueba. Alega que la apreciación de la prueba realizada por el tribunal de instancia, no representa el balance más racional, justiciero y jurídico. Indica que la prueba documental y testifical presentada por estos demandantes, que hemos denominado Grupo A, fue suficiente en derecho para declarar con lugar la demanda, según exige la Regla 10 (f) de las Reglas de Evidencia.

Se desprende de la sentencia apelada, que el juez desestimó aquellas causas de acción que no habían prescrito, excepto las co-demandantes Daisy López Nunci, Herminia Rodríguez Carmona y Alejandro Bocachica Colón. Encontró el Juez que los testimonios de los demás demandantes *"fueron*

*flacos y descarnados"*. Según explicó, éstos no recordaban las entrevistas ni a los funcionarios que los entrevistaron ni las afiliaciones políticas de estos últimos. Concluyó que en sus testimonios, *"no hay prueba alguna que demuestre discrimen por razones políticas"*. ■ El juez sentenciador resumió como sigue su apreciación de la prueba de estos co-demandantes:

*"De un análisis concienzudo de los hechos vertidos ante este Tribunal por los diferentes testimonios de los aquí demandantes, no se desprende prueba alguna que conecte a ninguno de los demandados con actuaciones antijurídicas en el desempeño de sus funciones en cuanto a la selección y reclutamiento de empleados en ascenso. Al contrario, la prueba demostró que todos los candidatos que habían competido por un puesto en particular estaban debidamente cualificados para que cualquiera de ellos fuera seleccionado. Así lo admitieron los demandantes en Sala. No hubo prueba alguna que demostrara que alguno de los seleccionados no estuviesen cualificados para competir para el puesto"*. Sentencia, página 19-20.

Para sustentar sus planteamientos en torno a la apreciación de la prueba, la parte apelante sólo presentó una transcripción oficial de los testimonios de los co-demandantes López Nunci, Rodríguez Carmona y Bocachica Colón. Aparte de ello, según lo expresa la parte apelada en su alegato, no hace *"intento alguno de identificar en qué consistió el testimonio presentado por cada uno de los reclamantes y sus testigos"*. Tampoco *"... identifica[n] o... precisa[n] en qué consistió la prueba documental que se presentó durante la vista"*.. No rebate, pues, la presunción de legalidad y corrección de la sentencia de instancia en cuanto a los demás co-demandantes ni aporta argumentos que ameriten nuestra intervención con la apreciación de la prueba realizada por el foro sentenciador. *Rodríguez Oyola v. Machado Díaz,* ___ D.P. R. ___ (1994), **94 J.T.S. 82**; *Coop. Seguros Múltiples v. Lugo Torres,* ___ D.P.R. ___ (1994), **94J.T.S. 77**; *Rodríguez Amadeo v. Santiago Torres,* ___ D.P.R. ___ (1993), **93 J.T.S. 106.**

En lo que se refiere a los tres co-demandantes cuyas causas no fueron desestimadas de entrada por el tribunal de instancia, las señoras López Nunci y Rodríguez Carmona y el señor Bocachica Colón, el examen de las transcripciones sometidas por la parte apelante, a la luz de la doctrina establecida respecto al discrimen político en el empleo, corrobora a cabalidad la conclusión del foro de instancia. Cuando se alega discrimen político, el demandante tiene el peso inicial de probar por preponderancia de la prueba que la conducta protegida fue el factor sustancial o motivante de la acción de despido. También deberá establecer la ausencia de motivo racional para el despido y su sustitución por otro empleado de afiliación política diferente a la suya, pero afín a la de la autoridad nominadora. *McCrillis v. Navieras de P.R.*, 123 D.P.R. 113 (1989); *Rodríguez Cruz v. Padilla Ayala,* 125 D.P.R. 486 (1990); *C.E.S. v. Gobernador,* ___ D.P.R. ___ (1994), **94 J.T.S. 125**. Los co-demandantes López Nunci, Rodríguez Carmona y Bocachica no probaron los hechos básicos que activan la presunción del discrimen político.

Según expuso el juez en la sentencia apelada:

*"La prueba presentada fue confusa, incompleta y plagada de conjeturas y conclusiones irracionales. "... [N]o se probó la existencia de un motivo irracional que justificara la no selección de estos candidatos. Por el contrario se probó a la saciedad de parte de los demandados que todos los candidatos que comparecen en una certificación de elegibles tienen que cumplir con los mismos requisitos para el puesto y que de esos candidatos se puede escoger uno de ellos, por lo que es muy razonable y en derecho no escoger a los demandantes. "... [N]o se probó que se haya escogido a un candidato del Partido Nuevo Progresista en ausencia de un motivo racional... Los candidatos... comp[iten] por un puesto y son entrevistados porque... llenan los requisitos mínimos de preparación y experiencia... por lo tanto, cualquiera de ellos tiene el derecho a ser seleccionado independientemente [de su afiliación política] y una vez seleccionados, para poderlos descualificar se tiene que probar que sus ideales políticos fue el único requisito que se utilizó para su selección y no otro. Esto no se ha probado en este caso."* Sentencia, páginas 22-23.

**IV**
Por todos los fundamentos antes expuestos, se confirma la sentencia apelada en cuanto a la desestimación de la causa de acción de todos los demandantes que tuvieron la oportunidad de presentar su prueba en la vista en su fondo (Grupo A) y se revoca en cuanto a la disposición por

prescripción de las causas de acción de los co-demandantes del Grupo B. Se revoca también la imposición de honorarios de abogado en esta etapa del procedimiento, por cuanto hasta el momento no se ha demostrado temeridad y la dilación de los procedimientos en instancia es atribuible a actuaciones de ambas partes. Véase la Regla 44.1 y 44.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III; *Miranda v. Estado Libre Asociado,* ___ D.P.R. ___ (1994), **94 J.T.S. 152**; *Benítez Guzmán v. García Merced,* ___ D.P.R. ___ (1990), **90 J.T.S. 62.** Se devuelve el caso para que el tribunal de instancia reciba prueba en cuanto al momento cognoscitivo de los daños alegados por cada demandante del Grupo B, previo a resolver finalmente la alegación de prescripción de su causa de acción. Ello permitirá al tribunal de instancia aquilatar también si procede imponer honorarios de abogados.

Así lo acordó y manda el tribunal y lo certifica la Secretaria General.

Sonia Pacheco Román
Secretaria General

### ESCOLIOS 96 DTA 144

**1.** 32 L.P.R.A. sec. 3524.

**2.** Mediante moción presentada ante este foro el 22 de junio de 1995, los apelantes desistieron *"con perjuicio de las alegaciones, causas de acción y reclamaciones en la demanda respecto al carácter personal de todos los co-demandados",* solicitud que acogemos en el día de hoy.

**3.** Regla 21.2 de Procedimiento Civil, 32 L.P.R.A., Ap. III, R. 21.2.

**4.** El Reglamento aludido *"Reglamento sobre ascensos a puestos directivos locales, técnicos de currículo y de supervisión en el sistema de instrucción pública"* fue aprobado el 21 de mayo de 1974 por el entonces Secretario de Instrucción Pública, Ramón A. Cruz.

**5.** Demanda de 30 de abril de 1982, página 14. Conviene aclarar que *"[c]uando un empleado público, como en este caso, reclama violación a sus derechos constitucionales tal acción no tiene que litigarse en jurisdicción primaria ni tiene que agotarse el remedio administrativo. Pierson Muller v. Feijoó, 106 D.P.R. 839 (1978); Otero Martínez v. Gobernador, 106 D.P.R. 552 (1977)...". Fermín Orta v. Ayala,* ___ D.P.R. ___ (1992), **92 J.T.S. 96,** página 9741.

**6.** En su sentencia, el juez indica que los demandantes no objetaron este informe. Sin embargo, éstos alegan en su moción de reconsideración que sí lo objetaron *"en todos y cada uno de los escritos que fueron radicados por estos [sic] con posterioridad a la Moción de Desestimación por Prescripción radicada por la parte demandante...".* Moción en solicitud de reconsideración, página 4.

**7.** Véase la Moción supletoria a moción de sentencia sumaria por prescripción de la parte demandada presentada el 23 de febrero de 1993.

**8.** Las entrevistas de los maestros interventores fueron celebradas en agosto, octubre, noviembre y diciembre de 1982, julio de 1983 y en septiembre de 1984.

**9.** Los demandantes originales en este grupo que hemos denominado Grupo B son: Irma Otero Sánchez; Nyrma Canabal Rodríguez; Nydia Esther Ortiz; Horacio Rivera Nieves; José A. Lebrón Lugo; Joséfina Mariani Rivera; Carmelo Zeno Pérez; Elyzabeth Lynn Román; Guillermo Wharton Ortiz; Marcos Cintrón Morales y Carlos J. Miranda. Para los efectos de este listado no se incluye a los tres demandantes originales que desistieron de la demanda.

Los interventores son: Jesús Arroyo Cedeño; Carmen L. Díaz Pérez; Florencio Soler Pérez; Anselmo Miranda Mercado; Alba Martorell Aguilú; Dominga Cardona Rodríguez; Reina y Centeno Ortiz; Aida Rodríguez Ríos; Hilda Zeno Pérez y Ruth Cruz Aguilar.

**10.** El grupo A lo constituían los siguientes co-demandantes quienes habían acudido a diversos números de entrevistas, según se indica a continuación. Los **co-demandantes originales** eran: Armando González Rivera (1); Alejandro Bocachica Colón (4); Luz M. Estrada Navarro (2); José Aldarondo Rivera (2); Herminia Rodríguez Carmona (12); Ana Figueroa Ortiz (1); Tomasa Merced Alejandro (2); Daisy López Nunci (3) y Yolanda Anguita Torres (1). Los **co-demandantes interventores**

eran: Israel Matos Morales (una el 24 de julio de 1981); Carmen Lafontaine Fontán (dos: el 21 de septiembre y el 28 de octubre de 1981) y Oscar Fontán Rivera (dos: 10 y 28 de agosto de 1981 el resto en el 1979 o antes).

**11.** A tenor con el Informe preparado por el *Departamento de Educación, estos tres demandantes originales* superaban a los demás en cuanto al número de entrevistas a las cuales habían asistido durante el año anterior a la radicación de la demanda. Alejandro Bocachica asistió a nueve entrevistas, cuatro de ellas entre *el 30 de abril de 1981 y 30 de abril de 1982. Herminia* Rodríguez Carmona compareció a trece entrevistas, doce de éstas dentro del mencionado período. Daisy López Nunci fue entrevistada en veintiocho ocasiones para ascensos, tres de éstas dentro del año prescrito.

**12.** Realmente fueron ocho, según hemos indicado: del 23 de febrero al 23 de octubre. En la sentencia apelada el juez expresa que tiene *"por no radicada la moción en relación a Moción Supletoria a moción de Sentencia por Prescripción y Otros Extremos presentada por la parte demandante por haberse presentado 7 meses después"* de que el demandando presentó su moción de sentencia sumaria y la moción supletoria a esta última. Surge de la moción de los demandados en oposición a aquella en que los demandantes le solicitan al tribunal de instancia la reconsideración de la sentencia que el tribunal denegó la moción de 23 de octubre de 1993 de los demandantes apoyándose en la Regla 8.4 (a) de Procedimiento Civil. 32 L.P.R.A. Ap. III, R. 8.4 (a).

**13.** *"Moción en relación a Moción Supletoria..."*, pág. 5.

**14.** *Id.*, pág. 7.

**15.** Entre otras razones, por incluirse en dicho grupo a interventores cuyas entrevistas fueron posteriores a la presentación de la demanda.

**16.** Apelación, página 9.

**17.** *Id.*, página 11.

**18.** 31 L.P.R.A. sec. 5141.

**19.** 1 L.P.R.A. sec. 13.

**20.** 31 L.P.R.A. sec. 5298.

**21.** Sentencia, página 15.