# 2003 DTA 119

RECEIVED

NOV 0 5 2003

SERIALS DEPT.
HARVARD LAW SCHOOL LIBRARY

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL I DE SAN JUAN
## PANEL II

ALBERTA DE LA PAZ MATOS
Demandante-Apelante

v.

TOYOTA DE PUERTO RICO CORP., Y/O JOHN DOE
Demandados-Apelados

Núm. KLAN-02-00897

San Juan, Puerto Rico, a 24 de julio de 2003

Panel integrado por su Presidenta, la Juez Rodríguez de Oronoz,
y las Juezas Peñagarícano Soler y Bajandas Vélez

Rodríguez de Oronoz, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La parte apelante, Alberta de la Paz Matos, nos solicita la revocación de la sentencia sumaria notificada por el Tribunal de Primera Instancia de San Juan el 8 de agosto de 2002. Por los fundamentos que expondremos a continuación, resolvemos que procede la revocación de la sentencia apelada.

### I

El 22 de octubre de 1999, la señora de la Paz presentó una demanda contra Toyota de Puerto Rico Corp. (en adelante Toyota de PR) por daños y perjuicios. Alegó que el 13 de diciembre de 1997 tuvo un accidente de tránsito en el cual las bolsas de aire de seguridad o "*airbags*" de su automóvil Toyota Corolla de 1994 explotaron y le causaron quemaduras severas y laceraciones permanentes en la cara y el torso. Adujo que ello le marcó su cara con cicatrices, sufriendo otros daños físicos, mentales y morales. Sostuvo que la explosión y desplazamiento de las bolsas de aire del Toyota fueron causados directamente por la negligencia y culpa de la demandada Toyota de PR.

En la demanda arguyó que Toyota de PR había sido el diseñador, manufacturero, constructor y vendedor del automóvil en cuestión y que ello le hacía vicariamente responsable de los daños, porque su producto era defectuoso y no preparado para el uso anunciado en su diseño y manufactura. Argumentó, además, que Toyota de PR era responsable a la demandante basado en la teoría de beneficio económico.

Luego de contestar la demanda y negar responsabilidad, Toyota de PR presentó una moción de sentencia sumaria. Sostuvo que el vehículo objeto de la demanda fue vendido por Vieques Auto Corp. (en adelante Vieques Auto) el 12 de febrero de 1994; que Toyota de PR fue creada como una corporación organizada bajo las leyes del Estado Libre Asociado de Puerto Rico el día 3 de marzo de 1994; que Toyota de PR comenzó sus operaciones como distribuidor autorizado de automóviles marca Toyota el 1ro. de junio de 1994; que para la fecha en que se vendió el vehículo en cuestión, la distribuidora de los vehículos marca Toyota en la jurisdicción de Puerto Rico lo era Gómez Hermanos, Inc. (en adelante Gómez Hermanos); que Toyota de PR no manufactura ni diseña automóviles y que no importó, manufacturó, diseñó, distribuyó, promocionó, vendió ni participó en forma alguna en la cadena de distribución del vehículo Toyota Corolla de 1994 propiedad de la

demandante y objeto de la demanda. A la luz de lo anterior, Toyota de PR argumentó que no existían controversias genuinas sobre hechos materiales y que procedía dictar sentencia sumaria a su favor, desestimando la demanda.

La solicitud de sentencia sumaria estuvo acompañada de una declaración jurada de Paul J. Príncipe, Director del Departamento de Satisfacción del Cliente de Toyota de PR, y de otros documentos incluyendo una carta del abogado de la apelante con el número del automóvil objeto de la controversia, el recibo de compra del vehículo en cuestión y una certificación de incorporación de Toyota de PR emitida por el Departamento de Estado de Puerto Rico.

El 6 de febrero de 2001, la demandante solicitó prórroga para oponerse a la solicitud de sentencia sumaria. Adujo que en esos momentos no había concluido el descubrimiento de prueba, por lo que no había recopilado la prueba necesaria para sostener sus defensas ante la solicitud de sentencia sumaria sometida por Toyota de PR. En la misma moción en que solicitó la prórroga, la demandante presentó la alegación adicional de que Toyota de PR era una subsidiaria directa de la corporación matriz Toyota Motor Corporation de Japón (en adelante Toyota de Japón), la que a través de Toyota de PR introducía en el comercio directo de Puerto Rico sus productos de automóviles Toyota. Argumentó la demandante que Toyota de PR, como corporación subsidiaria y agente residente de Toyota de Japón, que sí diseñó y manufacturó el vehículo objeto de la demanda, respondía por los daños causados por el defecto en el sistema de bolsa de aire del vehículo en cuestión.

El 14 de febrero de 2001, Toyota de PR contestó la nueva alegación de la demandante. Sostuvo, en primera instancia, que no procedía la prórroga solicitada por la demandante para contestar la moción de sentencia sumaria y que tampoco procedía el descubrimiento adicional solicitado con el objetivo de obtener la evidencia que sostuviera sus alegaciones. Señaló, además, que Toyota de PR no respondería a la parte demandante aun siendo una subsidiaria de Toyota de Japón, quien había sido la manufacturera del vehículo objeto de la demanda, porque Toyota de PR nunca fue parte de la cadena de distribución del vehículo en cuestión y, más aún, Toyota de PR era una corporación local e independiente organizada bajo las leyes de Puerto Rico, quien no era agente, agente residente ni representante de la manufacturera del vehículo objeto de la demanda, Toyota de Japón. Arguyó que Toyota de PR no podría ser responsable por los actos alegadamente cometidos por la manufacturera, meramente por dicha manufacturera ser la compañía matriz de Toyota de PR, de ser ese el caso, ya que se trataba de dos entidades legales diferentes y separadas. Argumentó que Toyota de PR no respondía por el mero hecho de que la manufacturera introdujera al presente los vehículos marca Toyota en el mercado de Puerto Rico a través de Toyota de PR. Expuso que Toyota de PR no era sucesora en derecho de la entidad que distribuyó el vehículo objeto de la demanda, Gómez Hermanos.

La moción de Toyota de PR estuvo acompañada por los siguientes documentos en apoyo: una declaración jurada de Nelson Cardona Muñiz, ■ agente residente de Toyota de PR; fragmentos del contrato efectuado entre Gómez Hermanos y Toyota de PR; y un anejo del contrato, el *"Schedule 'H'"* titulado *"Pending Customer Claims, Suits or Litigations in Which Gómez Hermanos, Inc. is a party Defendant; Claims to be Undertaken by Toyota or the New Company [Toyota de PR] on the Completion Date"*.

La parte demandante se opuso à la solicitud de sentencia sumaria. Su moción a estos efectos, de 13 de noviembre de 2001, sostuvo lo siguiente. En cuanto a la defensa presentada de Toyota de PR, de que ésta no manufactura ni diseña automóviles, por lo que no podía ser responsable por un defecto en el diseño o manufactura del Toyota en cuestión, la demandante sostuvo que Toyota de PR era una subsidiaria (*"wholly-owned subsidiary"*) de Toyota de Japón, la cual sí diseñó y manufacturó el vehículo en cuestión. Respecto a la defensa de Toyota de PR de que era Gómez Hermanos la que había distribuido el Toyota, la demandante sostuvo que Toyota de PR no estaba en el pleito meramente para responder como distribuidora de los automóviles Toyotas en PR, sino también como subsidiaria y representante-agente en Puerto Rico de Toyota de Japón. Añadió que cualquier relevo de responsabilidad que hubiera concedido Gómez Hermanos a la sucesora

en derecho, Toyota de PR era uno que sólo aplicaba a las partes contratantes y en nada afectaba a terceros. En cuanto a la defensa de Toyota de PR de que al momento de la venta del vehículo por Vieques Auto, la distribuidora no era Toyota de PR, sino Gómez Hermanos, la demandante sostuvo que Toyota de PR, como corporación sucesora en derecho de la distribuidora Gómez Hermanos y subsidiaria de Toyota de Japón, respondía como quiera a la parte demandante. Finalmente, la demandante sostuvo que al momento de realizarse el diligenciamiento del emplazamiento, Toyota de PR era el agente residente de Toyota de Japón y que a la luz de la doctrina del Tribunal Supremo en *Quiñones Román v. Compañía ABC*, \_\_\_ D.P.R. \_\_\_\_ (2000), **2000 J.T.S. 172**, se trató de un emplazamiento a esta última a través de su agente administrativo. La parte demandante anejó como exhibit a su moción en oposición documentación obtenida mediante el descubrimiento de prueba, a saber, la página 1 del *"Formal Agreement"* suscrito por Víctor M. González Vázquez y Esther G. Gómez, y Toyota de Japón.

El TPI acogió la solicitud de sentencia sumaria de Toyota de PR y desestimó la demanda mediante sentencia notificada el 8 de agosto de 2002. ■ El foro de instancia encontró probados los siguientes hechos:

*"1. El distribuidor de los vehículos Toyota en Puerto Rico que distribuyó el vehículo objeto de la demanda lo fue Gómez Hermanos.*

*2. Toyota de PR no importó ni vendió el vehículo objeto de la presente demanda, habiendo sido el mismo vendido por Vieques Auto Corp., a la parte demandante el día 12 de febrero de 1994, según la orden de compra del mismo.*

*3. Toyota de PR no fue creada como una corporación organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, sino hasta el día 3 de marzo de 1994, según la certificación del Departamento de Estado a tales efectos.*

*4. En virtud de un contrato intitulado "Formal Agreement" de 28 de marzo de 1994, Víctor M. Gómez y su esposa Esther Gómez y Toyota de Japón acordaron comprar y vender activos de Gómez Hermanos a ser traspasados a una nueva y separada compañía que se creó a los fines de adquirir los activos la cual sería denominada Toyota de PR.*

*5. En los contratos otorgados entre Gómez Hermanos, Toyota de Japón y Toyota de PR no hay indemnificación alguna en cuanto a la venta del referido vehículo de parte de Toyota de PR, ya que dicho vehículo ni fue importado, ni distribuido por Toyota de PR, sino por Gómez Hermanos.*

*6. Toyota de PR no es agente residente de la manufacturera de vehículos Toyota, y sí una corporación local e independiente organizada bajo las leyes de Puerto Rico, quien no es agente, ni representante de la manufacturera del vehículo objeto de la demanda."*

En virtud de las anteriores determinaciones, el tribunal de instancia concluyó que Toyota de PR no manufacturó, importó, distribuyó, ni vendió el vehículo objeto del litigio, por lo que no podía ser responsable bajo la doctrina de responsabilidad absoluta, ya que no había intervenido en la cadena de distribución del referido automóvil; que el vehículo había sido importado y distribuido por Gómez Hermanos y vendido por Vieques Auto; que Toyota de PR no nació a la vida jurídica, sino hasta el 3 de marzo de 1994, por lo que resultaba imposible que antes de esa fecha hubiese distribuido o vendido vehículo alguno, especialmente el día 12 de febrero de 1994 cuando el vehículo objeto de la demanda fue vendido a la parte demandante; que Toyota de PR ni Toyota de Japón asumieron la obligación contractual de liberar a Gómez Hermanos de cualquier obligación como consecuencia de la importación y la venta del vehículo en cuestión; que al ser Toyota de PR una corporación local e independiente, no agente ni representante de la manufacturera del vehículo objeto de la demanda, no podía ser responsable de las acciones de la manufacturera.

Inconforme con este dictamen, el 3 de septiembre de 2002, la señora de la Paz acudió ante nos mediante recurso de apelación. En su escrito señala que el tribunal de instancia erró al concluir sumariamente que Toyota de PR no manufacturó, ni distribuyó, ni vendió, ni importó el vehículo de la señora de la Paz, por lo que no era responsable bajo la doctrina de responsabilidad absoluta. Asimismo plantea que el foro apelado erró al no declarar a Toyota de PR sucesora en derecho de Gómez Hermanos, la corporación que importó y distribuyó el vehículo objeto de la demanda.

Oportunamente, el 1 de octubre de 2002, Toyota de PR presentó su alegato. Nos reitera los argumentos expuestos en la moción de sentencia sumaria.

Ponderado el expediente y analizado el derecho aplicable, resolvemos revocar la sentencia sumaria recurrida y devolver el caso al foro de instancia para la continuación de los procedimientos.

## II

La moción de sentencia sumaria está regulada por la Regla 36, 32 L.P.R.A. R. 36, Ap. III (1983). Dicha regla faculta al tribunal para que disponga de un caso sin celebrar vista en su fondo, en aquellas situaciones en que la parte que la solicita demuestre que no existe controversia en cuanto a los hechos esenciales alegados en la demanda y que tan sólo resta disponer de las controversias de derecho existentes. *PFZ Prop., Inc. v. General Accident Insurance Co.,* 136 D.P.R. 881 (1994). *Véase además, Pilot Life Ins. Co. v. Crespo Martínez,* 136 D.P. R. 624 (1994); *Marín v. American International Insurance Co. of P.R.,* 137 D.P.R. 356 (1994); *Medina v. M.S. & D. Química,* 135 D.P.R. 716 (1994); *Rivera et al. v. Superior P.K.G. Inc. et al.,* 132 D.P.R. 115 (1992); *Consejo de Tit. C. Parkville v. MGIC Fin Corp.,* 128 D.P.R. 538 (1991); *Cuadrado Lugo v. Santiago Rodríguez,* 126 D.P.R. 613, 279-281 (1990); *Roig Com. Bank v. Rosario Cirino,* 126 D.P.R. 613, 617-618 (1990); *Tello Rivera v. Eastern Airlines* 119 D.P.R. 83 (1987); *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 D.P.R. 714 (1986).

Este mecanismo procesal promueve la adjudicación rápida de los casos y la economía procesal, pero su objetivo básico es obtener una solución justa. *Cuadrado Lugo v. Santiago Rodríguez, supra,* a las págs. 279-281. En este contexto, un tribunal debe hacer dos determinaciones para que pueda disponer del caso sumariamente. En primer lugar, debe determinar que no existen controversias en cuanto a los hechos. En segundo lugar, debe determinar que en derecho procede emitir sentencia a favor de la parte que la solicita.

Sin embargo, como requiere la adjudicación de un litigio sin que las partes tengan la oportunidad de presentar su caso en corte, la sentencia sumaria es *"un remedio extraordinario que sólo debe concederse cuando el promovente ha establecido su derecho con claridad y ha demostrado que la otra parte no tiene derecho a recobrar bajo cualquier circunstancia discernible de las alegaciones que no se haya refutado por la evidencia presentada". Corp. Presiding Bishop CJC of LDS v. Purcell, supra.* Es sobre la parte que solicita la sentencia sumaria que recae el peso de establecer la inexistencia de una controversia real sobre todo hecho material y pertinente que a la luz del derecho sustantivo aplicable, determinaría una sentencia a su favor como cuestión de derecho. *Roth v. Lugo,* 87 D.P.R. 386 (1963).

Le corresponde a la parte promovida rebatir dicha posición por vía de declaraciones juradas u otra documentación que apoye su posición, pues si bien el no hacerlo no necesariamente significa que ha de emitirse el dictamen sumario automáticamente en su contra, tal omisión le pone en riesgo de que ello ocurra. *Corp. Presiding Bishop CJC of LDS v. Purcell, supra; Flores v. Municipio de Caguas,* 114 D.P.R. 521 (1983).

La Regla 36.3 impone al juez que considera una solicitud de sentencia sumaria la obligación de considerar no sólo las declaraciones juradas sometidas para sustentarlas o las contradeclaraciones juradas de la parte contraria, sino *"las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas"* amén de *"todo documento admisible en evidencia". Flores v. Municipio de Caguas, supra; Padín v. Rossy,* 100 D.P.

R. 259 (1971). A tenor con esta obligación, el juzgador deberá analizar concienzudamente la moción de sentencia sumaria y su oposición, sus anejos y el expediente en su totalidad, con el propósito de determinar si queda algún hecho material en controversia o si existen alegaciones afirmativas en la demanda radicada que no han sido refutadas; en cualquiera de dichos casos, el tribunal deberá denegar la solicitud de sentencia sumaria. *Cuadrado Lugo v. Santiago Rodríguez, supra.*

La determinación de la existencia de controversias en cuanto a los hechos requiere que el tribunal estudie los documentos que le son sometidos por las partes tanto en apoyo, como en contra de la moción. En este proceso, la duda por parte del tribunal sobre la existencia o no de una controversia de hechos en el caso bajo su consideración derrota la moción de sentencia sumaria. *Corp. Presiding Bishop CJC of LDS v. Purcell, supra.* Lo que es más, todas las dudas en torno a los hechos se resuelven en contra del promovente. *Hernández v. Caraballo,* 72 D.P.R. 673, 683 (1951). Esto significa que cualquier duda sobre un hecho debe resolverse a favor de la persona que se opone a la moción porque en esta etapa del procedimiento el juez no debe considerar la credibilidad de los documentos. Bajo nuestro ordenamiento jurídico, una parte tiene derecho a un juicio plenario cuando existe la más leve o mínima duda en cuanto a cuáles son los hechos; toda duda en cuanto a la existencia de una controversia real de hechos debe resolverse en contra de la parte que solicita una sentencia sumaria. *Jorge v. Universidad Interamericana,* 109 D.P.R. 505, 512 (1980); *Mercado Riera v. Mercado Riera,* 87 D.P.R. 566, 567 (1963).

Antes de examinar los planteamientos de las partes en torno a·si existe o no controversia de hechos esenciales en este caso, de manera que estemos en posición de determinar si actuó o no correctamente el Tribunal de Primera Instancia al emitir la sentencia sumaria apelada, es necesario examinar el derecho aplicable a la reclamación contenida en la demanda.

En Puerto Rico rige la norma de la responsabilidad absoluta del fabricante o vendedor por daños causados por productos defectuosos o peligrosos. Esta norma establece que el demandante tiene la carga de la prueba respecto a que el producto particular del demandado que le produjo daños estaba efectivamente defectuoso. Esto es, tiene que demostrar que el producto defectuoso fue la causa legal de las lesiones sufridas. No obstante, el perjudicado no tiene que probar la negligencia del fabricante.

Conforme a la doctrina de responsabilidad absoluta del fabricante o vendedor, todos los que intervienen en la cadena de fabricación y distribución responden solidariamente con el fabricante ante el perjudicado.

Quedan incluidos en la doctrina de responsabilidad absoluta del fabricante los defectos de fabricación del producto, los defectos de diseño del producto y los defectos por la insuficiencia en las advertencias o instrucciones del producto.

Por tanto, se trata de una norma de responsabilidad civil extracontractual adoptada por el Tribunal Supremo en el caso de *Mendoza v. Cervecería Corona, Inc.,* 97 D.P.R. 499 (1969), en el cual dicho foro expresó que:

*"Ciertamente, la norma más sabia y de mayor congruencia con la política pública es la de establecer la responsabilidad absoluta del fabricante para el consumidor. ... 'El propósito de tal responsabilidad es asegurar que el costo de los daños resultantes de los productos defectuosos sean sufragados por los fabricantes que enviaron tales productos al mercado en vez de las personas damnificadas que están impotentes para protegerse ellos mismos'."*

Fundado también en razones de política pública, para la mayor protección del consumidor, el Tribunal Supremo de Puerto Rico ha decidido que una corporación que adquiere los activos de otra es responsable, bajo la doctrina de responsabilidad absoluta, de los defectos que puedan tener los productos fabricados por la corporación adquirida. Véase *Montero Saldaña v. Amer. Motors Corp.,* 107 D.P.R. 452 (1978). Véanse,

además, *Ferrer v. General Motors Corp.*, 100 D.P.R. 246 (1971); *Rivera et al. v. Superior P.K.G., Inc. et al.*, 132 D.P.R. 115 (1992), y *Aponte v. Sears Roebuck de P.R., Inc.*, 144 D.P.R. 830 (1998).

## III

Las controversias medulares de este caso giran, entre otras tantas, en torno a si Toyota de PR es una subsidiaria de Toyota de Japón; si Toyota de PR es propiedad de Toyota de Japón o es controlada por ésta; si Toyota de PR es la corporación representante en Puerto Rico de la corporación manufacturera Toyota de Japón; si Toyota de PR es gerente administrativo o agente de Toyota de Japón; si Toyota de Puerto Rico es sucesora en derecho de Gómez Hermanos; y si en los acuerdos de compraventa entre los esposos Gómez y Toyota de Japón quedaron plasmadas las obligaciones y responsabilidades de éstos y de Toyota de PR en cuanto a demandas por actos y omisiones antes y después del contrato de compraventa.

De los autos surgen tres documentos. **Primero**, fragmentos de un *"Formal Agreement"* de 18 de marzo de 1994 suscrito por Víctor M. Gómez y su esposa Esther G. Gómez y por Tatsuro Toyoda, Presidente de Toyota de Japón. Al final de este documento, Kunihiko Kato, en su capacidad de Presidente de la nueva compañía, Toyota de PR, estampa su firma dando su consentimiento al contenido del mismo. **Segundo**, un *"Bill of Sale"* de 31 de mayo de 1994 suscrito por Víctor M. Gómez, su esposa Esther G. Gómez y Kunihiko Kato en su capacidad de Presidente de Toyota de Puerto Rico. **Tercero**, un documento titulado *"Pending Customer Claims, Suits or Litigations in Which Gómez Hermanos, Inc. is a Party Defendant"*.

Transcribimos a continuación algunos de los fragmentos del *"Formal Agreement"*: (Para efectos del *"Formal Agreement"* Toyota es Toyota de Japón, GHI es Gómez Hermanos, Inc. y el New Company es Toyota de PR)

*"**Article I. Incorporation of New Company***

*Toyota shall establish and organize its wholly-owned subsidiary under the laws of Puerto Rico ("New Company") to carry out the purchase of those certain assets and properties of GHI, as separately identified pursuant to Article 2 hereof. The New Company shall: engage primarily in the import, distribution, sales, and service of Toyota brand motor vehicles and Lexus brand passenger vehicles (hereinafter collectively referred to as vehicles") and spare parts therefor ("Space Parts") in Puerto Rico. **Notwithstanding the formation of the New Company, Toyota shall remain an obligor under and by the terms and conditions of Formal Agreement**.*

....

*Article 13. No Assumption of Liabilities*

*Neither Toyota nor the New Company shall assume or be liable for any of the liabilities or obligations of any kind. Whether absolute, contingent, accrued, or otherwise, held by Gómez or GHI in relation to or against any third party as a result of the transactions contemplated herein, **provided that such liabilities of obligations are not attributable to acts or omissions to act of Toyota and or the New Company**.*

....

*Article 11. Indemnification*

*(1) Indemnification by Gómez*

*(a) Gómez shall, and shall cause GHI to, unconditionally indemnify and hold harmless Toyota and the New Company from and against any and all suits, actions, obligations, demands, charges, losses, and claims of the*

*Current Employees and former employees of GHI, the Current Dealers and former dealers of GHI, and any other parties, including, but not limited to, damages, costs, and expenses associated therewith, as well as reasonable attorneys fees and legal expenses, resulting, directly or indirectly, form the failure of Gómez and or GHI to perform or observe fully any convenant, representation, warranty agreement, or provision to be performed or observed by Gómez and/or GHI in or pursuant to this Formal Agreement and the Other Agreements, and from the business operations or acts or omissions to act of Gómez, and GHI that arose on or before the Completions Date, including, but not limited to any warranty claim by the Current Dealers for warranty services for the Vehicles sold by GHI prior to the Completion Date,* **with the exception of those customer claims in connection with the Vehicles or the Spare Parts to be undertaken by Toyota or the New Company as described in Schedule II, attached hereto. With respect to a customer claim in connection with the Vehicles or the Spare Parts as from the Completion Date, Toyota shall undertake, or shall cause the New Company to undertake, the defense thereof except if the claim is attributable to acts or omissions to act of GHI.**

...

*(2)* **Indemnification by New Company**

*(a) The New Company shall unconditionally indemnify and hold harmless Gómez and GHI from and against any and all suits, actions, obligations, demands, charges, losses, and claims of any party, including, but not limited to, damages, costs, and expenses associated therewith, as well as reasonable attorneys fees and legal expenses which Gómez and, or GHI may incur or suffer,* **resulting, directly or indirectly, from the failure of Toyota and or the New Company to perform or observe fully any convenant, representations, warranty, agreement, or provision to be performed or observed by Toyota and/or the New Company in or pursuant to this Formal Agreement and the Other Agreements.**

**In case that the New Company does not indemnify or hold harmless Gómez or GHI in accordance with the above, Toyota shall be responsible for the same.** " (Énfasis suplido).

Estos documentos ponen en controversia hechos esenciales, como por ejemplo, los relativos a si Toyota de PR es representante o agente de Toyota de Japón. Por un lado, la parte demandada acompañó su moción de sentencia sumaria con una declaración jurada del agente residente de Toyota de PR, Nelson Cardona Muñiz. Este declaró en el referido documento que Toyota de PR es una corporación local, independiente y que no es accionista, afiliada ni representante, ni agente de Toyota de Japón. Manifiesta además en dicho documento que Toyota de PR y sus empleados no están autorizados a recibir emplazamientos a nombre de Toyota de Japón. Por otro lado, la parte demandante acompañó su oposición a la moción de sentencia sumaria con el *"Formal Agreement"* suscrito por el Sr. Gómez y Toyota de Japón de donde surge específicamente que Toyota de PR es una subsidiaria, *"wholly owned subsidiary under the laws of Puerto Rico"*, de Toyota de Japón.

Asimismo, hay cláusulas en los documentos contractuales que ponen en controversia otros hechos esenciales. Por ejemplo, hay cláusulas que eximen a Toyota de PR de algunas reclamaciones judiciales pendientes en los tribunales, por las cuales Gómez Hermanos sería responsable. Sin embargo, hay otras cláusulas en el *"Formal Agreement"* mediante las cuales Toyota de Japón reconoce su responsabilidad cuando las reclamaciones surjan debido a actos y omisiones de Toyota de Japón o Toyota de PR. Según el Artículo 13 del *"Formal Agreement"*:

*"Neither Toyota nor the New Company (TDPR) shall assume or be liable for any of the liabilities or obligations of any kind, whether absolute, contingent, accrued, or otherwise, held by Gómez, or GHI in relation to or against any third party as a result of the transactions contemplated herein* **provided that such liabilities or obligations are not attributable to acts or omissions to acts of Toyota and, or of the New Company [Toyota de**

Debemos enfatizar que ante el tribunal de instancia sólo se presentaron fragmentos de los documentos que en conjunto plasmaron el negocio de compraventa de activos y deberes de lo que una vez fue Gómez Hermanos, Inc. a Toyota de Japón y Toyota de PR. Por ende, el tribunal no tuvo ante sí toda la información necesaria para la adjudicación correcta y justa de este caso. Para conocer si en efecto la transacción entre Gómez Hermanos (**a través de Víctor M. Gómez y su esposa Esther G. Gómez**), Toyota de Japón y Toyota de PR tiene algún efecto jurídico sobre la reclamación contenida en la demanda de epígrafe, es necesario que el tribunal tenga ante sí todos los documentos de esta transacción, con todos sus anejos. Es evidente que no sólo hay un *"Formal Agreement"*, sino *"Other Agreements"*, según lo sustancia el Artículo 11, 2(A) del *"Formal Agreement"*.

Nuestro ordenamiento jurídico no favorece que se presente ante el juzgador prueba documental fragmentada. Véase la Regla 8 de las de Evidencia, la cual dispone que:

*"Cuando un escrito, grabación o filmación, **o parte de éstos** es presentado como evidencia por una parte, **la parte contraria puede requerir la presentación, en ese momento, de la totalidad del escrito...**que deba ser presentado para la más cabal comprensión del asunto."* (Énfasis nuestro)

A tenor con esta norma probatoria, la cual evidentemente persigue que ante el juzgador se presente prueba completa y confiable, Toyota de PR debió presentar ante el Tribunal de Primera Instancia **todo el *"Formal Agreement"*, todos los otros acuerdos y/o contratos (*"Other Agreements"*) y todos sus anejos**, cosa que no hizo.

Por otro lado, en materia de interpretación de contratos, el Código Civil dispone una serie de normas entre las cuales se encuentra la que dispone que:

*"Para juzgar de la intención de los contratantes, deberá atenderse principalmente a los actos de éstos, coetáneos y posteriores al contrato."* (C.C., Art. 1234, 31 L.P.R.A. 3472).

*"Las cláusulas de los contratos deberán interpretarse las unas por las otras, atribuyendo a las dudosas el sentido que resulte del conjunto de ellas."* (C.C., Art. **1237**, 31 L.P.R.A. Sec. **3475**).

A tenor con los citados artículos del Código Civil es necesario que el tribunal tenga ante sí el testimonio de personas con conocimiento personal de todos los pormenores que culminaron en la firma de estos contratos, no sólo para ofrecer confiabilidad ante el juzgador en torno a la autenticidad de los documentos, sino de su contenido y de la verdadera intención de las partes.

Toyota de PR nunca presentó declaraciones juradas de personas que tuvieran conocimiento personal de los contratos y acuerdos entre Gómez, Toyota de Japón y Toyota de PR. De hecho, Toyota de PR ni siquiera presentó declaraciones juradas de las personas cuyas firmas aparecen al final del fragmentado *"Formal Agreement"*, siendo dos de esas personas de nacionalidad japonesa. Así, no solamente erró dicho foro al considerar esos documentos y resolver, sin más, que Toyota de PR no era responsable de ninguna manera ante la apelante, sino que en efecto permanece en controversia si en efecto hubo alguna transacción entre Víctor M. Gómez, Esther G. Gómez, Gómez Hermanos, Toyota de PR y Toyota de Japón que tuviera algún efecto jurídico sobre la reclamación contenida en la demanda de epígrafe. Esta controversia de umbral, como indicamos anteriormente, no puede ser adjudicada como lo hizo el Tribunal de Primera Instancia, sin celebrar un juicio en su fondo, razón por la cual la sentencia sumaria parcial apelada debe ser revocada.

En resumen, los hechos que surgen al examinar los documentos a que aluden las partes en sus respectivas mociones de solicitud y oposición a que se dicte sentencia sumaria derrotan la solicitud de sentencia sumaria. Las

discrepancias encontradas exigen que se celebre una vista evidenciaria y que el juez ejerza su función adjudicativa, ya que existe una controversia real en cuanto a las alegaciones y los documentos presentados. Es evidente que el Tribunal de Primera Instancia no se encontraba en posición de resolver sumariamente la controversia de umbral planteada.

A la vez que revocamos la sentencia recurrida, se hace necesario advertir al tribunal recurrido que deberá permitir el descubrimiento de prueba adicional que sea necesario para adjudicar el presente caso y permitir, asimismo, cualquier enmienda a la demanda y expedir cualesquiera emplazamientos que sean necesarios para traer al pleito a cualquier parte que pueda serle responsable a la señora de la Paz por los hechos alegados en la demanda. Ello así, porque la doctrina de responsabilidad absoluta se funda en razones de política pública, para la mayor protección del consumidor. En este caso, las transacciones comerciales privadas entre Gómez Hermanos, Toyota de Japón y Toyota de PR, no deben impedir que una consumidora como la aquí demandante se vea impotente de encausar su alegada reclamación por desconocimiento de las mismas.

Una vez se concluya con el descubrimiento de prueba y ya estén en el pleito todos los codemandados correspondientes, entonces el tribunal de instancia, a base de prueba mucho más completa que la anejada en las mociones de las partes relacionadas con la moción de sentencia sumaria presentada por Toyota de P.R., estará en posición de adjudicar la reclamación de la parte demandante.

Por último, debemos destacar que el hecho que un panel de este tribunal haya resuelto esta controversia de forma distinta (véase *Torres Torres v. Toyota de PR, Inc.,* Sentencia de 29 de mayo de 1998 del panel integrado por su Presidenta Jueza Rivera de Martínez y los Jueces Rivera Pérez y Soler Aquino, siendo Juez Ponente el Juez Soler Aquino), no es óbice a lo que resolvemos en el día de hoy. La ley orgánica que rige los procedimientos en este Tribunal expresamente dispone que las sentencias, resoluciones y opiniones de este Tribunal no constituyen precedente. Artículo 4.001, Ley de la Judicatura de 1994, según enmendada.

## IV

Por todo lo cual, se revoca la sentencia sumaria apelada y se devuelve el caso al Tribunal de Primera Instancia para que éste, a tenor con el presente dictamen, dilucide en un juicio en su fondo las controversias de hechos esenciales existentes, sobre si alguien es responsable a la señora de la Paz bajo la doctrina de responsabilidad absoluta, de ésta probar daños por un producto defectuoso.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 2003 DTA 119**

1. Nos parece increíble que la copia de la declaración jurada de Nelson Cardona Muñiz que Toyota de P.R. acompañó junto con su moción del 14 de febrero de 2001, fue una prestada en un caso *distinto* al caso de autos.

2. Tal parece que dicha sentencia es un proyecto de sentencia preparado por unas de las partes. Nótese que al final de la sentencia se indica que ésta fue emitida en Aibonito, Puerto Rico, cuando se trata de un caso presentado y decidido en el Tribunal de Primera Instancia, Sala Superior de San Juan.